[No. 22307.   Department Two.   October 1, 1930.]

EARL T. REAMER, *as Administrator, Respondent,* v.
WALTER H. C. GRIFFITHS, INCORPORATED,
*Appellant.*[1]

[1]Reported in 291 Pac. 714.

Roberts, Skeel & Holman and Everett O. Butts, for appellant.

Patterson & Patterson, for respondent.

MAIN, J.—This action was brought to recover damages for wrongful death claimed to have been due to negligence chargeable to the defendant. The action was brought on behalf of C. E. Reamer, the husband of Cora Reamer, deceased, their daughter and two sons. The trial resulted in a verdict in favor of the husband in the sum of $5,000, and in favor of the daughter in the sum of $1,000. As to the two sons, the verdict was in favor of the defendant. Motions for judgment notwithstanding the verdict and for new trial were made and overruled. Judgment was entered upon the verdict, from which the defendant appeals.

Walter H. C. Griffiths, Inc., is a corporation, organized under the laws of this state, and engaged in the city of Seattle in the business of selling automobiles. C. E. Reamer and wife, together with their daughter, had resided at Long Prairie, Minnesota. Sometime during the fall of the year 1928, Mr. and Mrs. Reamer came to Seattle to visit their two sons, who resided there, the daughter accompanying. The accident which caused the death of Mrs. Reamer occurred November 16, 1928, at about three o'clock p. m., at the intersection of Tenth avenue northeast and east Eightieth street, in the city of Seattle. Tenth avenue northeast extends north and south, and east Eightieth street, east and west, both of which streets are paved.

At the northeast corner of the intersection, there is

a stop sign similar in design and located in approximately the same place with reference to the intersecting street as such signs are placed relative to arterial highways. Beginning five blocks to the south of east Eightieth street, Tenth avenue northeast is an arterial highway, extending into the business section of the city. From that point, or east Seventy-fifth street, to the north across east Eightieth street, Tenth avenue northeast had not been legally designated as an arterial highway, though the stop sign above referred to was placed at the intersection by the streets and sewers department of the city.

On the day mentioned, Chester Reamer, one of the sons of Mr. and Mrs. Reamer, drove his mother into the city in a Chevrolet coupe which he owned, in order that one or both of them might do some incidental shopping. As they were driving home in the afternoon, the Chevrolet coupe, at the intersection of the two streets mentioned, collided with a De Soto sedan, owned by the appellant, but driven at the time by Mrs. Cecile A. Rice, who was accompanied by an employee of the appellant, who was instructing her how to drive the car.

Prior to this, Mr. and Mrs. Rice had arranged for the purchase of a De Soto automobile from the appellant, but that car had not been delivered. Each of them had previously driven a Ford, but were not familiar with the driving of any other car. A day or two prior, the appellant had sent an employee to instruct Mr. Rice how to drive the De Soto. Mr. and Mrs. Rice reside one block east and one block south of the intersection above referred to. Before the accident, Walter H. Grenfell, at the request of the appellant, had driven the De Soto to the residence of Mr. and Mrs. Rice for the purpose of instructing Mrs. Rice how to drive the same. After arriving there,

some conversation took place between Mr. Grenfell and Mrs. Rice as to her knowledge of the operation of the car, after which they both got into the car, Mrs. Rice taking the wheel. They then proceeded north to east Eightieth street, and turned west with the intention of proceeding across Tenth avenue northeast and continuing to the west on east Eightieth street.

At this time, Chester Reamer and his mother were proceeding north on Tenth avenue northeast. The two cars were approaching the intersection at about the same time. The occupants of each car saw the occupants in the other car. Chester Reamer testified that he was approaching the intersection at twenty or twenty-five miles an hour; that he saw the De Soto and thought it was going to stop on account of the arterial highway sign; that it did not stop and, as he entered the intersection, he set the brakes of the Chevrolet, but he did not have time to stop, and turned the Chevrolet to the left; that the De Soto proceeded straight across the intersection and struck the Chevrolet just back of the right front wheel. The door flew open and Mrs. Reamer fell out and sustained the injury from which she died later that day. There was other testimony that the De Soto did not stop in recognition of the stop sign.

Mr. Grenfell and Mrs. Rice testified that, as they approached the intersection, and a few feet before reaching the stop sign, the De Soto was stopped; that it was then started and was proceeding in second gear at a speed of about eight to twelve miles an hour. There was other testimony that the De Soto was proceeding at a speed of from fifteen to twenty miles per hour. As to the situation when the De Soto was about half a length into the intersection, Mr. Grenfell testified as follows:

"About the time we got a half a car length into the intersection, I saw he was coming faster than I had figured he was, and so I caught the emergency brake. I saw that I couldn't do any good by doing that so I— all the time we were moving—I started to grab the wheel. I got a hold of it and just about that time the crash came. I didn't have time to swing the wheel before the crash."

Mrs. Rice and Mr. Grenfell testified that the Chevrolet car struck the De Soto on the left side back of the front wheel. The speed of the Chevrolet was placed by some of the testimony at thirty to thirty-five miles per hour.

█ It is first contended that the evidence was not sufficient to take the case to the jury. Under the facts as above stated,—and they are facts which the jury had a right to find—the question was clearly one for the jury to determine. If the evidence offered by the respondent is to be believed, the De Soto car was driven into the intersection without being stopped in recognition of the sign and in disregard of the approach of the Chevrolet; that is, the jury had a right to so find. On the other hand, if the testimony offered by the appellant is correct, then the Chevrolet approached the intersection at an excessive speed and ran into the De Soto as it was crossing the intersection.

█ Even though the driver of the Chevrolet was negligent, that would not necessarily be imputed to his mother, who was a mere guest at the time. This appears to be recognized by the appellant, and the case of *Sadler v. Northern Pac. R. Co.*, 118 Wash. 121, 203 Pac. 10, is cited in support of the contention that Mrs. Reamer was not entitled to recover, even though a guest. That case, however, is different from this. There the driver of the automobile did not see the approach of the railway train, while the guest did. Here,

under the evidence, the driver of the Chevrolet saw and knew of the approach of the De Soto and, as he stated, believed it was going to stop in recognition of the sign. There was nothing that Mrs. Reamer failed to do at the time which would justify taking the case from the jury as a matter of law because she failed to perform any duty which, in the exercise of ordinary care, a guest under such circumstances should perform. The question of liability was one for the jury.

It is next contended that the court erred in the admission of evidence. Over objection, testimony was received as a part of the case of the respondent in chief as to the sign above referred to, and also as to the amount of traffic which ordinarily moved upon Tenth avenue northeast. This testimony was material and relevant at the time, as showing the amount of traffic, which would have a bearing upon what an ordinarily careful and prudent driver would do in entering that street, even though it was not an arterial highway. At this stage of the case, the respondent did not know, of course, that the appellant's testimony would be to the effect that the De Soto had, in fact, been stopped in recognition of the sign. At the time the testimony was offered, it was properly received, and there was no error in this respect.

The appellant next contends that a new trial should have been granted because of error in the instructions given and the refusal to give certain requests. As to the instructions given, complaint is directed principally against two instructions wherein the jury were, in effect, told that, if they found that Chester Reamer, the driver of the Chevrolet at the time of the collision, was negligent, and if they found that he had placed himself, his mother and the automobile in a position of danger, from which it was impossible for him, his mother, or either of them to ex-

tricate themselves, and if the jury found that, after these facts became apparent to Mrs. Rice, sufficient time still remained so that she might, by the exercise of ordinary care and skill, have avoided the collision by either stopping or turning her car to the right, the respondent would be entitled to recover, unless the jury should further find that Mrs. Reamer was guilty of some negligence that materially contributed to her death.

We see no just complaint, under the facts of this case, of the instruction. The instructions appear to us to fit the facts as the jury had a right to find them. The jury had a right to find that the driver of the Chevrolet, as he entered the intersection, set the brakes but could not stop, turned his car to the left, and that, as it was proceeding diagonally across the intersection, it was struck on the right front by the De Soto. They also had a right to find that, as the De Soto entered the intersection, Mr. Grenfell and Mrs. Rice saw the Chevrolet, knew that a collision was imminent, and could have avoided the same by either setting the brakes on the De Soto or turning to the right. This seems to be made especially clear by the testimony of Mr. Grenfell, an excerpt from which is above quoted.

An instruction on the last clear chance rule is pertinent when the defendant actually sees the peril of a traveler on the highway and should have appreciated the danger, and failed to exercise reasonable care to avoid injury, although the plaintiff's negligence may have continued up to the instant of the injury. In *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302, referring to the case of *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, where the rule was definitely stated, it was said:

"Going no further back into the decisions than to *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941,

L. R. A. 1916A 943, we find that case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury; but (2) that where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality *should have seen* the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself.''

The present case falls under the conditions stated in proposition No. 1 in that opinion, and there was no error in giving the instruction complained of.

It is further contended that the court erred in refusing to give an instruction to the effect that Jessie Reamer, the daughter, could not recover because the evidence failed to show that she was dependent upon her mother for support. In order to sustain a recovery, it was not necessary to show dependency, and there may be a recovery for pecuniary loss regardless of such dependency. In *Jensen v. Culbert,* 134 Wash. 599, 236 Pac. 101, it is said:

''It is first contended that Mrs. Jensen is not entitled to recover anything because she was not dependent upon her mother. This action is maintained by virtue of §§ 1 and 2, ch. 123, Laws of 1917, p. 495. [Rem. Comp. Stat., § 183 *et seq.*] Section 1 authorizes the personal representative to bring an action on account of death. Section 2 provides that

" 'Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers, who may be dependent upon the deceased person for support, . . .' [Rem. Comp. Stat., § 183-1.]

"It will be seen that the action may be brought on behalf of two classes of persons; the first being the wife, husband or child, and the courts have held that their measure of recovery is their pecuniary loss. The second class are parents, sisters or minor brothers who are *dependent upon* deceased. Mrs. Jensen is of the first class. It has generally been held that, under an act of this character, dependency is not a requisite for recovery by a child of the deceased, but that it may recover its pecuniary loss regardless of dependency. We so held in *Castner v. Tacoma Gas & Fuel Co.*, 123 Wash. 236, 212 Pac. 283. There we said that our act was almost identical with the Federal employees' liability act and quoted from a decision of the supreme court of the United States construing that act, as follows:

" ' "In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given." ' '

"That Mrs. Jensen suffered a pecuniary loss in the death of her mother, we think there can be no question."

In the present case, we think the evidence as to pecuniary loss of the daughter sustained by reason of the death of her mother is amply sufficient to support the verdict. The case of *Bortle v. Northern Pacific R. Co.*, 60 Wash. 552, 111 Pac. 780, Ann. Cas. 1912B 731, relied upon by the appellant, is a case where dependency was a necessary element of recovery, and con-

sequently is not applicable to the facts in the case now before us.

There are some further complaints as to the instructions given and requests refused, all of which have been considered, but we do not deem them of sufficient merit to require a detailed discussion. It is sufficient to say that we find no error in the instructions given or refused.

The judgment will be affirmed.

MITCHELL, C. J., and FULLERTON, JJ., concur.

HOLCOMB, J. (dissenting in part)—I concur in the above decision in all except the recovery of $1,000 by the daughter, Jessie Reamer. In my opinion the evidence does not justify any, or at most, but a moderate award to her. As to that recovery, I dissent.