[No. 25057.   Department One.   August 7, 1934.]

SUZETTE SMITH, *a Minor, by H. A. Smith, Her Guardian Ad Litem, et al., Respondents,* v. M. F. GAMP *et al., Appellants.*[1]

[1]Reported in 35 P. (2d) 40.

452

*Ralph S. Pierce, Edwin J. Cummins,* and *R. V. Welts,* for appellants.

*C. H. Henderson, Alfred McBee, Henry, Henry & Pierce,* and *Clarence W. Pierce,* for respondents.

MILLARD, J.—Plaintiff minors, each by a guardian *ad litem,* instituted this joint action to recover for personal injuries sustained by them as the result of being struck by an automobile owned and operated by the defendants, a marital community. From the judgment entered on the verdict in favor of the plaintiffs, motions for judgment notwithstanding the verdict and for a new trial having been denied, defendants appealed.

Appellants argue that respondents' disregard of the ordinance requirement to look to the right when arriving at the center line of the highway constituted contributory negligence, as a matter of law. It is further contended that, as the negligence of the respondents continued up to the time of the injury, and appellants did not discover respondents' peril in time to avert the collision, the trial court erred in submitting to the jury the question whether the appellants, by an observance of the rule of "last clear chance," could have avoided the accident.

The court charged the jury that, if the appellants actually saw the peril of the respondents and should have appreciated their danger, and failed to exercise reasonable care to avoid injuring them, the jury should find for the respondents, although the respondents were guilty of negligence that continued up to the instant of the injury. The court further instructed the jury that, if the respondents had negligently placed themselves in a situation of peril where the appellants did not actually see the peril of the respondents,

". . . . but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency which he operated, and the locality, should have seen the peril of the plaintiffs [respondents] and appreciated it in time by the exercise of reasonable care to have avoided injuring them, and the failure to escape the injury resulted from the failure of the defendants [appellants]to keep that lookout and exercise care, the defendant would be liable only when the plaintiffs' negligence had terminated or culminated in a situation of peril from which the plaintiffs could not by the exercise of reasonable care extricate themselves."

Although one injured in an automobile accident may have been guilty of negligence in that he violated a statute or an ordinance relating to the rules of the road, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar a recovery for the injury sustained. If the doctrine of last clear chance, which is a phase of the doctrine of proximate cause, is applicable, the plaintiff's negligence will not bar recovery, because the negligence of the defendant is the proximate cause of the plaintiff's injury.

"The doctrine of last clear chance, sometimes called the humanitarian or discovered peril doctrine, is a phase of the doctrine of proximate cause, and, assuming that the plaintiff has been guilty of negligence placing him in a position of peril and relieving the defendant from responsibility for any primary negligence on his part, declares that he will nevertheless be responsible for the injury sued for if the defendant then or thereafter discovers, or, in some jurisdictions, by the exercise of ordinary prudence should know, not only the fact of his peril, but also that the plaintiff either reasonably cannot escape from the peril, or apparently will not avail himself of opportunities open to him to escape, and if the defendant subsequently to

such knowledge has the opportunity, by the exercise of reasonable care to save the plaintiff from harm, and fails to exercise such care; the extent of the plaintiff's negligence not being material to the application of the doctrine. In such a case the negligence of the plaintiff will not prevent recovery because the negligence of the defendant is the proximate cause of plaintiff's injury." 2 Blashfield, Cyc. Automobile Law, p. 1270, § 8.

In explaining the statement in *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, respecting the last clear chance rule, we said, in *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302:

"That case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury; but (2) that where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality *should have seen* the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself.

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it."

If respondents entered the east traffic lane of the highway, thereby placing themselves in a dangerous situation, without looking to the right when they arrived at the center line of the highway, and such breach of the duty imposed upon them by the city ordinance constituted negligence, they were not, under the facts of this case, negligent, as a matter of law, in failing to be continuously thereafter (while continuing on their way across the east traffic lane to the east edge of the highway) looking to ascertain whether motor cars were approaching. It was for the jury to say whether respondents' negligence continued up to the time of the accident, or whether it terminated when they entered the east traffic lane and were in plain view of drivers of motor cars using the east traffic lane. That necessitated submission to the triers of fact of both phases of the last clear chance rule.

If appellants actually saw the dangerous situation in which respondents had negligently placed themselves and should have appreciated respondents' peril, the last clear chance rule would apply without regard to the continuing negligence of the respondents concurring with that of the appellants up to the very instant of the injury. In the second situation, the respondents' negligence must have terminated if the appellants did not actually see the peril, but by the exercise of reasonable care should have seen it.

"Assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies, without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury. A second situation to which the rule applies is this: where the person in control of such agency, by keeping a reasonably care-

ful lookout commensurate with the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time, by the exercise of reasonable care, to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This last phase of the rule applies whenever injury results from new negligence or from a continuance of the operator's negligence after that of the traveler has so ceased or culminated.'' *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943.

■ Applying the foregoing principle to the facts, summarized as follows, it is manifest that the trial court correctly submitted to the jury, under appropriate instructions, the question whether the appellants had the last clear chance to avoid the accident and whether they negligently failed to avail themselves of that chance.

Pacific highway runs north and south through Burlington. The traveled portion of the highway is paved with concrete twenty feet wide. Fairhaven avenue joins the highway from the east, forming a ''T.'' The Burlington high school is on the west side of the highway about one block north of this intersection.

On the clear night of January 22, 1932, about 10:20 o'clock, the respondents, high school students sixteen years of age, were on their way from a basketball game, played in the school gymnasium, to a dance. They walked south to a point fifty feet north of the junction of Fairhaven avenue with the highway, then started to walk from the west to the east side of the Pacific highway. The intersection was well illuminated by an electric light over it, and by outside lights

on a building at the northeast corner of the intersection. On arriving at the westerly edge of the highway, the respondents stopped and let a south-bound truck pass.

Respondent Smith looked to the south just before she stepped onto the traveled portion of the highway as she commenced her journey from the west to the east side of the highway. She then saw appellants' automobile, approaching from the south, in front of a service station two hundred and eighty-two feet distant. She did not again look to the south. After she had taken one or two steps east of the center of the pavement into the east traffic lane, she was struck by the left front of appellants' automobile, which was north-bound, and thrown a distance of twenty-five to thirty feet.

Respondent Thumlert testified that, when he and respondent Smith, who was standing a few feet to his right, arrived at the west edge of the highway to let a truck pass from the north, he looked to the south but could not see very far because the passing truck restricted his view. He took a few steps, about four feet, toward the southeast. He then looked to the south and saw the lights of appellants' automobile at a point two hundred and eighty-two feet to the south. He then started to walk across the highway. He did not stop, nor did he look again in either direction; he did not see appellants' automobile, which struck him on the right-hand side when he was four feet west of the east edge of the highway. The impact was such that this respondent was thrown a distance of sixty feet. There was no line or mark clearly identifying the exact center of the highway.

Section 23 of the ordinances of the city of Burlington provides that

"In crossing streets, pedestrians shall look out for vehicles and interurban cars and particularly on the left until reaching the center line of the street, and then to the right."

Appellant husband was en route from Seattle to Sedro Woolley, which had been his home for eighteen years. He was driving a practically new eight-cylinder sedan, equipped with four-wheel hydraulic brakes which appellant husband testified were in good condition. Respondents' witnesses estimated the speed of appellants' automobile at forty to forty-five miles an hour. Appellant husband testified that, as he approached the intersection, he was traveling about twenty-five miles an hour; that, as he crossed the intersection of Fairhaven avenue and the highway, the northern boundary of which was about fifty feet south of the scene of the accident, "I wasn't driving over twelve or fifteen miles an hour;" and that he increased speed slightly after he crossed the intersection. He further testified that he had increased his speed to from twenty to twenty-five miles an hour and was twenty to twenty-five or thirty feet south of the respondents when he first saw them, and that he immediately applied his brakes. He testified that he saw Thumlert running across the highway, but that he got only a glimpse of the other respondent from the corner of the windshield of his automobile.

One of appellants' witnesses, an automotive engineer, testified that appellants' automobile was equipped with the best brakes on the market; that, at a speed of twenty-five miles an hour, the automobile could be stopped in twenty-two to twenty-five feet, and at a speed of twenty miles an hour the car could be stopped in fourteen feet. There was other expert testimony to the effect that appellants' automobile, as equipped at the time of the accident and under the conditions then

obtaining, could be stopped in ten feet at twenty-five miles an hour.

When appellant Gamp first saw respondents in the east traffic lane, they were in a perilous situation. That peril was discovered by appellants in time to avoid the collision. Accepting as true the testimony of Gamp as to the distance he was south of respondents when he first saw them, and also accepting as a verity his testimony as to the speed he was then traveling, Gamp could have stopped his car at the point, or a few feet south thereof, where his car struck the respondents. If his witness is to be believed, Gamp could have stopped his car eleven to sixteen feet south of that point, while under the testimony of respondents' expert witness, the car could have been stopped fifteen to twenty feet short of the point where the accident occurred. Under the facts, the question as to whether there was time to act was for the jury.

■ Respondents alleged that appellants were negligent in failing to blow horn or give warning of their approach. The assignment that the court erred in refusing to withdraw that charge of negligence from the consideration of the jury is without substantial merit. It was appellants' duty, under the last clear chance rule, to warn the respondents by sounding horn. Whether appellants had time to sound the horn was for the jury to determine.

■ Appellants next contend that the court erred in refusing to give requested instruction withdrawing from consideration of the jury the question of permanent impairment of memory of respondent Thumlert. In its enumeration of the elements of damages for which respondent Thumlert could recover, the court did not include damages for loss of memory. It fairly appears that there was competent testimony on which

to submit that issue to the jury, hence appellants' have no cause for complaint.

Our examination of the record not disclosing reversible error, the judgment in favor of each respondent should be, and it is, affirmed.

STEINERT, MITCHELL, and MAIN, JJ., concur.

BEALS, C. J. (dissenting)—In my opinion, the doctrine of the last clear chance should not be applied in this case. Respondents having clearly been guilty of contributory negligence, the judgment should be reversed.

I therefore dissent.