## UNITED STATES v. MOSCOW—IDAHO SEED CO., Inc., et al.
### No. 8335.

Circuit Court of Appeals, Ninth Circuit.

Sept. 15, 1937.

J. A. Carver, U. S. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Hamblen, Gilbert & Brooke, of Spokane, Wash., and Yale Kroloff, of Oakland, Cal., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal by the United States from a judgment of nonsuit rendered against it in an action brought by appellant seeking to recover for damages sustained by it resulting from a collision between two automobiles.

The complaint contains two causes of action against the appellees.

The first cause of action alleges, substantially, that on the evening of the 9th day of July, 1934, a Ford automobile, the property of the United States of America, was being driven by S. H. Stewart, an employee of the plaintiff, along State Highway No. 11, in Spokane County, State of Washington, also known as Cheney High-

way, and that Wilber Brotherton, Jr., was driving a Plymouth sedan automobile, belonging to the defendant corporation, along U. S. Highway No. 10, also known as Sunset Highway, in the State of Washington; that the defendant Wilber Brotherton, Jr., agent of the said defendant corporation, was driving the said Plymouth automobile in a negligent, careless, and reckless manner, and as a result thereof the Ford automobile, the property of the United States, was run into by the Plymouth automobile as it crossed the intersection of said highways, thereby causing damages to plaintiff, by reason of injury to the automobile in the sum of $153.50, and for loss of its use in the sum of $165.

The second cause of action alleges, substantially, that Mary Louise Dutton, an employee of the plaintiff, was riding in the Ford car at the time of the collision; that she was insured by an act of Congress to provide compensation for immediate medical services for employees of the United States suffering injuries while in the performance of their duties; that the injuries complained of were suffered by Miss Dutton in the course of her duties as such employee and by reason of the negligence of the defendants; that the United States had paid the sum of $5 and had been damaged in that sum accordingly.

The defendants answered denying any negligence on their part, and further interposed an affirmative defense in which the defendants set up the statutory law of the State of Washington and alleged contributory negligence on the part of S. H. Stewart, driver of the government car.

To this affirmative defense, the United States demurred on the grounds that the affirmative pleading did not constitute a defense to plaintiff's causes of action. The demurrer was argued and submitted to the court, which rendered its opinion holding that the defendant could charge the United States of America with the negligence of its agents, and made an order overruling the demurrer of the United States of America to the affirmative defense of the defendants.

Thereafter, a jury was impaneled and the parties proceeded to trial.

The evidence for the appellant was substantially as follows:

On July 9, 1934, G. H. Stewart and Mary L. Dutton, both in the service of the United States, and at the time engaged in Government business connected with the United States Department of Immigration, had driven from Spokane to Cheney, both places located in Spokane County, State of Washington. The purpose of their journey was to visit the State Hospital for the Insane, located at Medical Lake, near Cheney, and ascertain whether there were any alien inmates subject to deportation. Having completed the investigation, they were returning to Spokane, and, at about 6:30 in the evening, were driving in a government-owned Ford automobile north from Cheney, Washington, on the Cheney Highway, which runs north and south. This highway, at the place where the collision occurred, intersects the Sunset Highway, which runs east and west. The area at the intersection of the two highways is fully paved. Stewart was driving the government-owned Ford car. Miss Dutton occupied the front seat at the driver's right, from which direction the Plymouth approached the place of collision.

On the Cheney Highway, along which the government employees were driving north, about 50 feet south of the south line of the Sunset Highway, there is a stop sign. Here Stewart stopped his car. He saw the Cheney bus coming from Spokane on the Sunset Highway east of the intersection about 400 or 500 feet. Stewart drove to the edge of the pavement on the Sunset Highway and stopped and waited for the bus to pass in front of him. He testified that he again looked to the right for a distance of at least 250 feet and there was no car in sight up to that time. On cross-examination Stewart said: "There was nothing to prevent my seeing a car 500 feet away if I had turned my head around to look that far." He then started in low gear to cross the Sunset Highway, going not over five miles an hour. He did not see any car coming and he says he probably didn't look after he got to the middle of the highway. On the Sunset Highway there is a "Slow" sign about 600 feet east of its intersection with the Cheney Highway, and about 300 feet still further east there is a sign marked "Junction."

North of and adjoining the Sunset Highway and east of and adjoining the Cheney Highway is a triangular shaped area that is graveled and leveled off over which automobiles are driven to a service station and hamburger stand, located on the northeasterly border of this graveled plot.

Stewart said he was going over to this stand to get something to eat but that he hadn't thought of that until he started across the intersection. Stewart further testified: "After I got to the middle of the highway, I probably didn't look again. I didn't see Brotherton coming until he was within 10 or 15 feet of the Government car. I don't know how fast he was coming." "Immediately after the accident I had a talk with Mr. Brotherton. I accused him of being at fault. I called his attention to the speed limit law limiting the speed to forty miles an hour. He said he was exceeding the speed limit all right." He testified that the front bumper of the government car was within two or three feet of the north edge of the Sunset Highway when the car driven by Brotherton crashed into him.

Miss Dutton testified that she was a government employee, and on the day in question was riding in the front seat on the right-hand side of the government car at the time of the collision. She said: "I cannot remember whether I looked to my right when I first stopped or not, although I expect I did, naturally. I saw the bus at that time. I did not see the car that later ran into us. I feel that I did look to my right. After we made our second stop and before entering the highway, I looked to the right, which was after the bus had passed, and I saw the car which collided with the car in which I was riding. The car in which I was riding had started up again. The first time that I saw the car that struck the car in which I was riding was after we had started out. I am thinking it was perhaps further down the highway than five hundred feet. It might be just as you would notice a car being a distance off and not consider it would have a collision with yours. That is my best judgment. The car that struck the car in which I was riding was approximately five hundred feet to my right." She did not say anything to the driver about it. She testified: "This car was in the same highway we were traversing, it was not running in the same direction but at right angles from us." She further said: "It was going from Spokane and we had not turned to go to Spokane yet." She said that they had almost crossed the highway when the impact took place. The front wheels of the car in which she was riding were just over the north side of the pavement when the Plymouth car struck the center of the car in which she

was and she was rendered unconscious for a short time. She did not remember if the car in which she was riding changed its course before the impact.

Dona Trunk, a witness for appellant, testified that at the time of the collision she was sitting in an automobile which was stopped at a point on the Cheney Highway about 8 or 9 feet north of the Sunset Highway, near the intersection of the two highways and not far from the hamburger stand there. She was facing south and saw the Plymouth car driven by Brotherton when it was probably 300 feet or 400 feet away, to the east, coming west toward the intersection. She saw the government Ford car driven by Stewart come into the intersection moving north. It "proceeded slowly or hesitatingly into the intersection." "After the government car started into the intersection it slowed down almost to a stop or else hesitated. I am sure he did not accelerate his speed or go faster and faster." She said that just as the government car drove slowly into the intersection, at about the same time, she saw the Plymouth car coming, about 300 feet away; it was coming pretty fast, it was traveling about 55 or 60 miles an hour. She made the remark: "Oh, my, they are going to bump." She thought the driver applied the brakes, she saw the Plymouth car slow down as it skidded and heard the impact when the cars collided. She did not think the government car moved more than 4 or 5 feet after it had been struck. Neither car overturned. After they collided both cars were north of the Sunset Highway. At the time of the collision the graveled area in front of the hamburger stand was clear; afterwards other cars drove into this space.

Deputy Sheriff Richardson was at the place of the collision shortly after it occurred and before the cars had been moved. He testified that both cars were east of the east line of the Cheney Highway; that the government Ford car was a little north of the Sunset Highway and the appellees' car close to the north line. The marks on the pavement indicated that the brakes had been applied on the Plymouth car and that it had skidded approximately 90 feet before it reached the position in which he found it. Appellee Brotherton told him he was going between fifty-five and sixty miles an hour. This witness testified that on that day a car going west on the Sunset Highway could have passed on the south side of the center line of the

highway or could have passed over the gravel area on the north side in front of the hamburger stand and turned back on the highway without danger. The witness also stated that if the government Ford car was at a point so that its front bumper was approximately two feet south of the north edge of the Sunset Highway and its rear bumper approximately three feet south of the center line on this highway there would still be approximately seven feet of concrete for the Plymouth car to safely pass.

During the progress of the trial the defendants sought by cross-examination of plaintiff's witnesses to show that the driver of the government car was himself guilty of negligence. The questions were objected to upon the ground that any negligence of the driver could not be imputed to the government. The court overruled these objections and timely exceptions to the rulings were noted.

At the conclusion of plaintiff's evidence counsel for defendants moved for a judgment of nonsuit. The court held that Mr. Stewart, the employee of the government who was driving and in charge of the government-owned Ford, was guilty of contributory negligence which was attributable to the plaintiff. And, further, that the doctrine of the last clear chance did not apply. Thereupon judgment of nonsuit was entered against the plaintiff, from which it appeals to this court.

In varying forms appellant assigns error as follows:

The court erred in overruling plaintiff's demurrer to the affirmative defense set forth in defendants' answer which charged the Government with responsibility for any negligence of the driver of the government car which may have contributed to the collision.

The court erred in applying the doctrine of respondeat superior to the United States of America, plaintiff herein, and in finding that the negligence of the agent here was imputable to appellant.

The court erred in deciding that the plaintiff was guilty of contributory negligence as a matter of law and refusing to submit the question of contributory negligence, if any, to the jury.

The court erred in failing and refusing to apply the doctrine of the "last clear chance to avoid" to the evidence presented by the plaintiff in this action, for the reason that the evidence shows that plaintiff could have, by the exercise of ordinary care and diligence, avoided the collision upon which the causes of action of plaintiff are based.

The court erred in ascribing and imputing the alleged contributory negligence of the driver of plaintiff's automobile to the passenger who was riding in said automobile and to whose rights plaintiff had, as a matter of law, been subrogated.

█ It must be conceded that the authorities are not in agreement as to whether or not a defense based on the contributory negligence of its agent may be urged against the government in a case brought by it. However, in the situation presented by the case at bar the action of the District Court in overruling the demurrer to the affirmative part of the answer must be sustained.

█ When the United States comes into court and institutes a suit for redress, not based on any infringement of its sovereignty and not for any violation of its governmental prerogatives, and submits a claim wholly in the nature of a private litigant, it, by implication, waives any immunity as sovereign and its adversary is entitled to set up any defense which would be available to him were his opponent another citizen instead of the government.

The language used by the court in the case of Luckenbach Steamship Co. v. Norwegian Barque Thekla, 266 U.S. 328, at pages 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313, aptly applies to the situation in this case:

"When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it. When the question concerns what would be paramount claims against a vessel libelled by the United States were the vessel in other hands, the moral right of the claimant is recognized. * * *

"The reasons that have prevailed against creating a government liability in tort do not apply to a case like this, and on the other hand the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest."

While that case was in admiralty and based upon maritime law, the reasoning of the court serves well to illuminate our position here.

The principle applied has been thus broadly stated: "The right of the United States as sovereign to exemption from suit may be waived * * *. When the United States has waived its right to exemption from suit, and asked the court to complete the adjudication of a cause which was rightfully begun in that jurisdiction, it is bound by the submission, and it is the duty of the court to proceed to the final determination of all the questions legitimately involved." 26 R.C.L. § 67, pp. 1461, 1462; see, also, State v. Bucholz, 169 Minn. 226, 210 N.W. 1006; Anderson, Clayton & Co. v. State ex rel. Allred, 122 Tex. 530, 62 S.W.(2d) 107.

The appellant having voluntarily selected the judicial forum wherein it has instituted a suit for damages to its Ford car arising out of an ordinary automobile collision has thereby consented that the court shall determine the matter in issue in accordance with the rules of law applicable to like controversies arising between private litigants.

While we hold as indicated above that there was no error in the action of the District Court in overruling plaintiff's demurrer to the affirmative defense which charges the government with responsibility for any negligence of the driver of its car and also that there was no error in the ruling of the court which permitted admission of evidence to support this ordinary legal rule, that the negligence of its authorized agent could be imputed to appellant, nevertheless, in the light of the record in this case, as here presented, we are required to hold that it was error for the lower court summarily to withdraw the consideration of the case from the jury on the evidence then presented and grant a nonsuit and judgment of dismissal.

It is clear that the questions of negligence and contributory negligence in the case of an automobile collision at a highway crossing is one of fact for the jury, unless the uncontradicted evidence shows that some positive mandate of the law has been violated, and that such violation was a proximate cause of the accident. The trial court sustained the contention of the appellees, that the driver of the government car was guilty of contributory negligence, because, although he had stopped and waited for one car to pass before he entered the highway, he did not observe with sufficient care the approach of the appellees' automobile. The statutory law of Washington defines the duties of automobile drivers at such an intersection.[1] The appellant had stopped and yielded the right of way to one vehicle on the U. S. highway, and the question of whether or not he was negligent in then entering the highway as slowly as he did without seeing a car as far distant as the appellees' car, in view of its obligation to slow down at the crossing, was a question of fact for the determination of the jury, and consequently the judgment must be reversed. Reamer, etc., v. Walter H. C. Griffiths, Inc., 158 Wash. 665, 669, 291 P. 714.

The appellant insists that even if its driver was negligent as a matter of law that, nevertheless, the case should have been submitted to the jury on the last clear chance doctrine. This theory is invoked because of the contention that if the appellee was driving so fast that he could not stop, he might have avoided the accident by swerving to the right or to the left, and thus passed safely in front or in rear of the government machine. In view of a new trial it is sufficient to say that if the evidence thereon is the same as in the first trial it would justify the submission of that issue to the jury under proper instructions as to the last clear chance doctrine.

Judgment reversed and cause remanded to the District Court for a new trial.

[1] Remington's Revised Statutes of Washington, § 6362—40: "The operator of any motor vehicle entering upon an arterial main traveled highway, from a public or private highway, road, street, way or driveway, shall yield the right of way to vehicles on such arterial highway and shall come to a full stop thereat when and where signs, posts or other markers so direct or indicate. * * * All state highways shall be considered arterial main traveled highways."