[No. 30155. Department Two. August 18, 1947.]

CLARA BROWNING, *Individually and as Administratrix, Respondent*, v. THE BREMERTON-CHARLESTON TRANSIT COMPANY, *Appellant.*[1]

[1]Reported in 183 P. (2d) 1005.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Erle W. Horswill,* for respondent.

JEFFERS, J.—Clara Browning, individually and as administratrix of the estate of her husband, Hilton Browning, instituted this action against The Bremerton-Charleston Transit Company, Inc., to recover damages for personal injuries claimed to have been sustained by her for the death of her husband and for damages to an automobile owned by plaintiff and her husband, resulting from a collision between a bus owned and operated by defendant and the Browning automobile.

The three causes of action set out in the complaint are each based on the negligent operation of the bus by defendant's driver, which negligent acts, deeds, omissions, and failure to act are as follows: (1) in driving the bus at an excessive rate of speed; (2) in failing to keep a lookout for the Browning automobile; (3) in failing to keep the bus under control, and in failing to turn the bus slightly to the left, which would have avoided the accident, and which, in the exercise of reasonable care, should have been done; (4) in failing to apply his brakes or to sound his horn when he knew, or, in the exercise of reasonable care, should have known, that a collision was imminent, and when by so doing, in the exercise of reasonable care, the collision could have been avoided; and (5) in failing to act to avert the accident at a time when, in the exercise of reasonable care, defendant knew, or should have known, that a colli-

sion was imminent, and in the exercise of reasonable care could have avoided the accident.

Defendant, by its answer, denied all allegations of negligence set out in the complaint and, as an affirmative defense, alleged that, if plaintiff sustained any injuries or damages as alleged in the complaint, the same were caused by the negligence of herself and her husband, and not by the negligence of defendant; that the negligence of the driver of the Browning car, which proximately caused the accident, consisted of the following acts and omissions: in driving into and upon an arterial highway without stopping before entering the arterial, as required by law; in driving directly in front of defendant's bus and in such close proximity as to make it impossible for defendant's agent to avoid a collision; in failing to keep a lookout for defendant's bus or any traffic proceeding on the arterial; in failing to accord defendant's bus the right of way; and in failing to exercise ordinary care for the protection of himself and plaintiff, under the circumstances existing at the time of the accident.

Plaintiff, by her reply, denied the allegations contained in the affirmative defense.

The cause came on for trial before the court and jury on September 25, 1946, and thereafter a verdict was returned in favor of plaintiff. Defendant filed a motion for new trial and a motion for judgment n. o. v. On November 14, 1946, the trial court entered an order denying the above motions and entered judgment for plaintiff in the sum of $6,250, in accordance with the verdict.

Defendant has appealed from the judgment and assigns as error the action of the trial court in denying appellant's motion for a directed verdict; in denying appellant's motion for judgment n. o. v.; and in failing to grant appellant's motion for new trial on the ground that the court's instruction No. 22½, dealing with the doctrine of last clear chance, was prejudicial error.

It may be stated here that, in our opinion, the controlling questions to be decided in this case are whether or not, under the facts, the trial court was justified in giving to the

jury an instruction on the first phase of the last clear chance doctrine, and whether or not there was sufficient evidence to warrant the jury in concluding that, under such instructions and the evidence, appellant was liable.

In passing upon the factual situation, respondent is entitled to the benefit of all the evidence and the reasonable inferences therefrom in support of her judgment; and in considering the evidence, we must exclude all that is contrary or in conflict. *Cummins v. Default,* 18 Wn. (2d) 274, 277, 139 P. (2d) 308.

Exhibit A, introduced by respondent, is a large map showing the street intersection where this accident occurred. It also shows Park avenue and Fifth street for a considerable distance each way from the intersection, together with curb lines, sidewalks, parking strips, and other objects along the respective streets. Practically all of the witnesses called referred to this map in their testimony.

The accident occurred on the evening of March 4, 1945, at about six o'clock, within the intersection of Park avenue and Fifth street, in the city of Bremerton. The evening was clear and the pavement dry. Fifth street, at the time of the collision, was an arterial highway, running in an easterly and westerly direction. There is quite a grade as one approaches the intersection on Fifth street from the west. About one block west of the intersection there is a grade of about four and one-half per cent, which decreases as one approaches the intersection, which is practically level. West of the intersection, the paved portion of Fifth street is about twenty-one feet wide from curb to curb. North of the paved portion is a parking strip nine and one-half feet wide, and north of the parking strip is a sidewalk ten or eleven feet wide. Fifth street is thirty-five feet wide east of the intersection.

Park avenue is a nonarterial street. It runs in a northerly and southerly direction and intersects Fifth street at right angles. The paved portion of this street is twenty feet wide at the intersection, and west of the paved portion there is a parking space, and west of the parking space a ten-foot sidewalk.

There is a stop sign at the northwest corner of the intersection on Park avenue. Because of the parking strip and sidewalk on the north side of Fifth street, the stop sign is about twenty-one feet north of the north line of the paved portion of Fifth street west of the intersection. At the time of the accident, there was also a blinker light in the center of the intersection, which flashed amber for travel on Fifth street, and red on Park avenue.

Hilton Browning died as the result of injuries received in the accident, and we do not have his testimony.

Mrs. Browning testified in substance as follows: On the evening of the accident, she and her husband were proceeding south on Park avenue in a model A Ford. Mr. Browning was driving. As they approached the intersection, the car was stopped at the stop sign to which we have referred. From this point, they had a good view to the west and east on Fifth street. They looked to the east and saw no traffic coming from that direction on Fifth street, and looking to the west, saw the bus approaching the intersection from the west on Fifth street. It was quite a little distance up the street and was going at a moderate rate of speed. Mrs. Browning located the position of the bus when she and her husband first saw it by a building on Fifth street, and estimated that at that time it was about two hundred feet away. Subsequently, when certain measurements were made on exhibit A, Mrs. Browning raised this estimate to two hundred sixty feet.

After stopping at the stop sign and making the observations above described, Mr. Browning shifted into low and started to cross the intersection. He then shifted into second gear and was proceeding at about fifteen miles per hour until just before the collision, at which time Mrs. Browning thought he speeded up a little, in an attempt to avoid the collision.

It does not appear whether or not Mr. Browning again looked after passing the stop sign. Mrs. Browning again looked when they were about in the middle of the intersection, at which time she estimated the bus was about forty feet west of the crosswalk, which would locate the bus at

that time as being about fifty or sixty feet west of the lane in which the Browning car was proceeding. At this time, Mrs. Browning thought the bus had increased its speed to thirty-five or forty miles per hour. She screamed at her husband, and he speeded up a little. She stated that the bus did not change its course, and the collision followed, the right front corner of the bus striking the right rear fender of the Ford, carrying it across the intersection and turning it over. The bus traveled about one hundred sixty feet after the impact.

Miller Worth was called by respondent. He had known none of the parties to this action prior to the accident. He stated that, on the evening of the accident, the Browning car passed the motorcycle on which he and his wife were riding, about seventy feet north of the intersection. At that time, Worth was traveling about ten miles per hour, as he and his wife were looking for a place to eat. The Browning car was traveling about fifteen miles per hour. He was about ten feet back of the Browning car when it stopped for the intersection, at which time it sounded like the driver was shifting gear. Worth came up to the stop sign and stopped.

"Q. And did you see the bus prior to the impact? A. Yes, I seen it quite a ways up the street—up 5th street. Q. I see. And where was the car at the time you first saw the bus? Where was its rear end with relation to the crosswalk? A. What's that? Q. I say: 'Where was the rear end of the car?' THE COURT: You mean the Ford car, when he first saw the bus? MR. HORSWILL [counsel for respondent]: When he first saw the bus, where was the rear end of the car? A. Just beginning to cross the intersection. Q. And where was the bus at that time? A. Well, it was quite a ways up the street. THE COURT: About how far? Can you estimate? THE WITNESS: One hundred or one hundred fifty feet, maybe. Q. I see. And where were you stopped with relation to the property line, there? A. Well, even with the front of that building. Q. Even with the building line. A. Our front wheels were even with the stop sign. Q. I see. And did you get an idea of the speed of the bus at that time? A. When I first seen it? Q. Yes. A. No, not necessarily. I seen it was coming quite fast. Q. And did you get an estimate—get any idea of its speed

in miles per hour as it approached the intersection, there? A. When it got down towards the intersection, it was coming pretty fast. Q. How many miles per hour? A. Thirty-five miles an hour, anyway, if not more. Q. Did you see the impact, actually, between the bus and the car? A. Yes. Q. And where was the rear end of the car with relation to what would be the south curb line of 5th Street, at the time the impact occurred? . . . A. Well, in relation to the curb line, it would be about—just about four foot out, north. Q. Four foot out of the south curb line? A. Yes. Q. And did you notice what particular portion of the bus struck the car? A. The front right quarter. Q. I see. And what portion of the car was struck by the bus? A. The right rear—just about the length of the wheel. . . . Q. And with relation to the bus as it came down there, did it veer at all at any time? I mean, did it change its course at all, prior to the impact? A. No, it just came bouncing across the intersection—made one of those bounces and that is when it hit the car. Q. And in the last, say, sixty feet, there, you saw the bus coming down the street, there, did it change its speed in any fashion? Did it stay at the same speed, was it slower, or what? A. It didn't change its speed."

Mrs. Worth was also called by respondent. She testified in general to the same effect as her husband. She was asked where the Browning car was when she and her husband stopped at the stop sign, and she indicated the location of the car on the map (exhibit A) by a letter 3 in a square, which would place the car about even with the north line of the traveled portion of Fifth street. She also located the position of the bus at this time by a letter 4 in a square. She estimated the speed of the bus at that time at about thirty-five miles per hour. The point where Mrs. Worth located the bus would be about one hundred feet west of the intersection. Mrs. Worth further testified that, as the bus came down the street, it did not change its speed or its course.

Appellant has set out in its brief a statement in writing relative to the accident, signed by Mr. and Mrs. Worth on March 23, 1945. This statement was taken by an investigator. It may be admitted that the written statement conflicts in some particulars with the testimony of these wit-

nesses given at the trial. The principal differences are that, in the written statement, the witnesses stated that the Browning car did not stop at the stop sign, and, in the written statement, they fixed the location of the bus as closer to the intersection when they first saw it.

Albert Niles, the driver of the bus, stated that he saw the Browning car from the time it passed the stop sign until the collision; that the car did not stop at the stop sign, but proceeded right into the intersection at about fifteen miles per hour, and so traveled up to the point of the collision. Mr. Niles stated that he was traveling east on Fifth street, right near the south curb, at about twenty to twenty-five miles per hour. While he first testified that he was approximately forty or forty-five feet west of the intersection when he first saw the Browning car, there is evidence from which the jury could have concluded that he was about one hundred feet west of the intersection when he first saw the car, for the reason that he located his position at the time he first saw the car as being opposite a certain building on Fifth street, which would have placed him about one hundred feet west of the intersection.

Niles further stated that the bus was equipped with air brakes, and that with a load, and under the conditions there existing, he could stop the bus in about forty-five or fifty feet. While he stated that he applied the brakes and attempted to swerve to the left just before the impact, it is apparent from his own testimony that, at the point where he stated he applied his brakes, such action on his part at that time could not have avoided the accident; in other words, it is apparent from his own testimony that he waited too long before making any effort to avoid a collision.

There is testimony by disinterested witnesses that the bus did not change its speed or its course, and that there was no indication of any application of the brakes. There is no evidence that the driver of the bus sounded a horn or gave any warning of any kind.

Mr. Niles further stated that he saw no other cars on the street from the time he first saw the Browning car.

Appellant, in its brief, argues assignments of error Nos. 1, 2, and 3 together, its theory being that the trial court erred in not holding as a matter of law that the driver of the Browning car was guilty of contributory negligence. Under assignment No. 4, it argues that the court erred in giving an instruction on the first phase of the doctrine of last clear chance.

The first question to be discussed is whether there was sufficient evidence in this case to justify the jury in concluding that appellant was guilty of negligence which was the proximate cause of the collision and the resulting damages to respondent.

■ We are of the opinion that, before a jury would be warranted in concluding that a defendant was guilty of negligence which was the proximate cause of an accident, under the first phase of the last clear chance doctrine, the evidence and all reasonable inferences to be drawn therefrom must show (1) that defendant actually saw the situation then existing; (2) that he failed to use reasonable care to avoid the accident, at a time when he had sufficient opportunity to avoid it, after he actually appreciated, or, as a reasonable man, should have appreciated, the peril of plaintiff.

"The doctrine of last clear chance, being a judicial exception to established principles, resting in fact and not in law, has been declared not subject to arbitrary definition. It is an affirmation of, rather than an exception to, the rules of proximate cause, and it is a rule of convenience as well as necessity, to which the courts have resorted in all proper cases where contributory negligence is pleaded as a defense and a jury is called upon to find the proximate cause of an accident.

"This doctrine is almost universally upheld in all personal injury actions based on negligence, and the base of the doctrine is this: A plaintiff who has negligently placed himself or his property in a situation of imminent peril and is either unconscious of the situation, or unable to avoid the danger, or both, may nevertheless recover damages of a defendant who negligently inflicts injury, if the defend-

ant could have avoided the injury after discovering the plaintiff's peril. . . .

"It is not necessary for defendant to have been guilty of any preceding negligence, but his failure to exercise the last clear chance to avoid the accident is itself a sufficient ground of liability.

"The last clear chance doctrine presupposes contributory negligence by which an injured party has placed himself in a position of peril. In such a case the negligence of the plaintiff becomes immaterial, and will not prevent recovery because the negligence of the defendant is the proximate cause of plaintiff's injury, the extent of the plaintiff's negligence not being material to the application of the doctrine provided it is not the final negligent act causing the injury." 4 Blashfield, Cyclopedia of Automobile Law & Practice, (Perm. ed.) 385 *et seq.,* § 2801.

Judge Ellis, writing the opinion of the court in the case of *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, discussed at considerable length the doctrine of last clear chance. We desire to quote quite extensively from the cited case, as the principles therein announced have been followed by this court, with some possible exceptions where there has been some confusion relative to the two phases of the last clear chance doctrine. The opinion states:

"It is next contended that the court erred in submitting to the jury the question whether the appellant, by an observance of the rule of 'last clear chance,' could have avoided the accident. It is first argued that this rule cannot be invoked because the complaint did not admit contributory negligence on the respondent's part. The answer, however, denied any negligence of the appellant and alleged affirmatively that the respondent's injury was due to his own negligence. This was equivalent to an allegation that contributory negligence of the respondent was the proximate cause of the injury. It was put in issue by the denial in the reply.

"The rule of last clear chance is grounded in the doctrine of proximate cause. Like any other phase of proximate cause, evidence to sustain it may be submitted to the jury under the general issue. We cannot subscribe to the doctrine that the rule of last clear chance can only be invoked by a plea in confession and avoidance. It would be more

logical to say that the defense of contributory negligence could not be made or submitted to the jury without confession of the primary negligence of the appellant. We have never so held, notwithstanding the fact that contributory negligence is in this state an affirmative defense which must be specially pleaded.

"The denial of contributory negligence is not necessarily a denial of any negligence on the part of the injured person. It is only a denial of negligence contributing directly to the injury. The doctrine of last clear chance, while presupposing some negligence on a plaintiff's part, *relieves that negligence of its contributory character where the injury results proximately from the failure of a defendant to embrace the last clear chance to avoid the injury.*" (Italics ours.)

The opinion states that it was the appellant's contention that in no case can a plaintiff recover where his negligence continues up to the time of the injury. After stating that the authorities cited by the appellant hardly bear out the above contention, the opinion continues:

"At any rate, this court has held, in accordance with many courts and with what we conceive to be the more logical as well as the more humane rule, that where the peril of a traveler on the highway is actually discovered and should be appreciated by the operator of a street car, or other agency of danger, there arises a new duty to exercise all reasonable care to avoid injury, and the failure to exercise such care, if it results in injury, will render a defendant liable notwithstanding the continuance of the plaintiff's negligence up to the instant of the injury. [Citing cases.]"

The instruction in the cited case covers both phases of the doctrine of last clear chance, and the opinion, after discussing the rule applicable to both phases, states:

"The application of the rule to the first situation, as above indicated, needs no support outside of simple considerations of humanity. Any other view would condone wilful or wanton injury."

In the case of *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302, we reaffirmed the rule announced in the *Mosso* case, *supra*, stating:

"Going no farther back into the decisions than to *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, we find that case endeavored to clarify the last clear chance rule and define two separate conditions under which it was applicable, and the rule is announced as (1) that where the defendant *actually* saw the peril of a traveler on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury."

The opinion then states the rule applicable to the second phase of the doctrine, with which we are not here concerned, and continues:

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it."

The opinion continues:

"This rule, as we have said, has been somewhat confused by later decisions which have failed to recognize the distinction between situations where the defendant actually saw and situations where, by the exercise of reasonable care, the defendant should have seen the position of the plaintiff."

We stated in *Smith v. Gamp,* 178 Wash. 451, 35 P. (2d) 40:

"If appellants actually saw the dangerous situation in which respondents had negligently placed themselves and should have appreciated respondents' peril, the last clear chance rule would apply without regard to the continuing negligence of the respondents concurring with that of the appellants up to the very instant of the injury."

We have recognized that it was proper, under certain conditions, to give an instruction on the last clear chance doctrine, in cases involving automobile collisions at street intersections. *Reamer v. Griffiths, Inc.,* 158 Wash. 665, 291 Pac. 714; *Moen v. Chestnut,* 9 Wn. (2d) 93, 113 P. (2d) 1030; *Gephart v. Stout,* 11 Wn. (2d) 184, 118 P. (2d) 801.

Appellant states in its brief that the trial court gave an instruction on the first phase of the last clear chance doctrine, on the theory that the bus driver actually saw the peril of the Brownings. Appellant then states that this court has many times held that the last clear chance doctrine was applicable only in cases where *the defendant was not required to act instantaneously, and that in the instant case there was not sufficient time to justify the application of this rule.* Appellant further states that only after the Browning car went through the red light and onto Fifth street would the bus driver be charged with the duty of attempting to avoid the car.

There might be merit to this last contention of appellant under some circumstances, but, in the instant case, it should be kept in mind that, according to the testimony of the bus driver himself, the Browning car proceeded past the stop sign at the entrance to the street, without stopping, at about fifteen miles per hour, and continued at that speed. So far as the bus driver observed, there was no indication that the driver of the car was going to stop or change the speed of his car. The evidence in this case does not show that the Browning car turned across or into the path of the oncoming bus, without any warning, but to the contrary, it shows that the Ford car traveled in the same direction and at the same rate of speed from the time the bus driver first saw it until the collision.

Appellant, to sustain its contention that the last clear chance doctrine is not applicable, under the facts in the instant case, cites and quotes from several Washington decisions. As typical of the cases cited, we shall refer to the following, which, in our opinion, show an entirely different factual situation from that presented in the instant case.

In the case of *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106, we held that an instruction on the last clear chance should not have been given. In the cited case, the action was brought by the respondent, who, just before the accident, was riding his motorcycle south on the highway, and a little to the right of the center of the road. Appellants were riding in an automobile in the same direction, and a

short distance behind and to the left of the center of the road. The presence of appellants was unknown to respondent, who suddenly cut across the road in front of appellant's car. It was respondent's intention to leave the main highway and go onto a road intersecting at an angle of about twenty-five degrees. The machines collided at the intersection. An instruction on the last clear chance was given. In discussing the question, we stated:

"It is true that appellants knew of respondent's presence and position, but it does not follow that they are to be charged with a knowledge of his intent, *suddenly and without warning,* to turn across the path of their automobile. We have given attention to the whole evidence and are convinced *that the accident happened so quickly that there was neither time nor opportunity* for appellants to act upon the last clear chance. Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation." (Italics ours.)

The case of *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684, involved a collision between a Ford delivery truck being driven north on J street in Tacoma, and a boy on roller skates coming south on J street. The truck and the boy were approaching the intersection of J and Eighteenth streets from opposite directions. They both reached the intersection at about the same time and, had they continued to travel in the same course on the street, would have passed each other; but just as they were in the act of meeting, the boy, suddenly and without warning, turned to his right immediately in front of the truck. We held that the doctrine of last clear chance was not applicable, citing *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106.

We shall refer to one more case cited by appellant, namely, *Zettler v. Seattle,* 153 Wash. 179, 279 Pac. 570. This case was reversed and a new trial granted, for the reason that we concluded the trial court erred in giving an instruction on the second phase of the last clear chance doctrine, the court being of the opinion that the plaintiff's negligence had not ceased, and he was not in a position of

peril from which he could not extricate himself. It seems to us this case was cited by appellant principally to emphasize the following statement made therein, which appellant stresses:

"The last clear chance doctrine is a very just and salutary rule to be applied in a proper case, *but its misapplication is fraught with great danger and often leads to unjust results, because it always invites a jury to disregard or excuse contributory negligence which would otherwise bar the action.*" (Italics ours.)

We recognize the merit of the above statement, and have given it careful consideration in arriving at our conclusion in the instant case. We agree that great care should be used in applying either or both phases of the last clear chance doctrine to cases of the general character of the one now before us; but, as above stated, it is a salutary rule, to be applied in a proper case.

It seems to us that, if the facts in this case do not warrant the application of the first phase of the last clear chance doctrine, it would be difficult to imagine a situation which would.

We are of the opinion that the facts in this case justified the submission to the jury of the following questions, it being admitted that the driver of the bus saw and observed the Ford car from the time it passed the stop sign to the point of collision. (1) Did the driver of the bus actually appreciate, or should he, as a reasonable man, have appreciated the peril of the Brownings? (2) Did he have sufficient opportunity to avoid the accident, and could he have avoided it by the exercise of reasonable care in the operation of the bus after he actually appreciated, or as a reasonable man should have appreciated, that a collision between the bus and the Browning car was imminent?

It should be kept in mind that there was evidence from which the jury could have concluded that the driver of the bus did not change his course or his speed, nor did he apply his brakes or give any warning from the time he first observed the Ford car until the collision.

We are of the opinion the jury, by its verdict, indicated that it concluded that the driver of the bus did actually appreciate, or as a reasonable man should have appreciated, the peril of the Brownings; that he had sufficient opportunity to avoid the accident, and could have avoided it by the exercise of reasonable care in the operation of the bus after he actually appreciated, or, as a reasonable man, should have appreciated, that a collision between the bus and the Browning car was imminent; and that he failed to exercise such reasonable care.

In view of our conclusions, it follows that the trial court properly denied appellant's motion for a directed verdict and its motion for judgment n. o. v.

Instruction No. 22½, as given by the trial court, is as follows:

"You are instructed that if the defendant actually saw the automobile of the plaintiff in the street ahead of him and should have appreciated the danger, if any, of the situation, but failed to exercise reasonable care to avoid the collision, such failure makes the defendant liable in this action, and you must find for the plaintiff even though the plaintiff's driver may have been guilty of negligence that continued up to the instant of the injury."

The form of the instruction has been approved in many cases decided by this court. See *Mosso v. Stanton Co.,* 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302; *Chapin v. Stickel,* 173 Wash. 174, 22 P. (2d) 290; *Smith v. Gamp,* 178 Wash. 451, 35 P. (2d) 40; and *Moen v. Chestnut,* 9 Wn. (2d) 93, 113 P. (2d) 1030.

May we say here that, in our opinion, the facts in the case last above cited, in so far as they apply to the first phase of the last clear chance doctrine, are quite similar to the facts in the instant case.

In addition to the contention that the doctrine of last clear chance was not applicable to the instant case for the reasons hereinbefore stated, appellant makes a further contention that the trial court unduly emphasized the doctrine by the manner in which instruction No. 22½ was given.

It appears that, after the instructions were read, counsel for respondent requested the giving of an instruction on last clear chance. Leaving the jury in the box, counsel for the respective parties and the court retired to the judge's chambers, where they discussed the matter, after which the judge came out and read to the jury instruction No. 22½. We are unable to see any prejudicial error in this proceeding.

For the reasons herein appearing, the court was justified in giving an instruction on the first phase of the last clear chance doctrine, and it follows that appellant's motion for a new trial was properly denied.

The judgment of the court entered on the verdict is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.

---

September 24, 1947. Petition for rehearing denied.