[No. 14037.   Department Two.   June 30, 1917.]

N. RICKER, *Respondent*, v. OREGON-WASHINGTON RAILROAD
& NAVIGATION COMPANY *et al.*, *Appellants*.[1]

APPEAL—PRESERVATION OF GROUNDS—SPECIFIC MOTIONS.  Where, in
an action for injuries at a railroad crossing, the evidence presented
an issue as to defendant's negligence on the theory of last clear
chance, error cannot be predicated upon the denial of a general mo-
tion for judgment challenging the sufficiency of the evidence, al-
though other questions of negligence and the plaintiff's contributory
negligence should have been taken from the jury, had the court
been requested to do so.

RAILROADS — CROSSING ACCIDENTS — NEGLIGENCE — LAST CLEAR
CHANCE—EVIDENCE—SUFFICIENCY.  The doctrine of last clear chance
applies where the engineer upon a train approaching a crossing, saw,
at a distance of 700 or 800 feet, or in the exercise of reasonable
care should have seen, the plaintiff's traction engine on the crossing,
stalled near the railroad tracks in a position of peril, but did nothing
to attempt to stop the train until within 100 feet of the crossing,
when it was too late to avoid a collision, and it appears that the
train should have been stopped and was stopped within a distance
of 500 or 600 feet.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered October 24, 1916, upon the verdict
of a jury rendered in favor of the plaintiff, in an action in
tort.  Affirmed.

*Bogle, Graves, Merritt & Bogle*, for appellants.

*Forney & Ponder*, for respondent.

PARKER, J.—The plaintiff, Ricker, seeks recovery of dam-
ages which he alleges resulted to him from the negligence of
defendant railway company and Dunlap, one of its locomotive
engineers, in causing one of its trains to collide with and
injure a large traction engine belonging to the plaintiff, at
a crossing near the northern limits of the city of Chehalis.
Trial in the superior court for Lewis county resulted in ver-

[1]Reported 166 Pac. 71.

dict and judgment against the defendants, from which they have appealed to this court.

The railway's double track main line runs approximately north and south through Chehalis. Its north-bound trains run over the east track, while its south-bound trains run over the west track. The street crossing in question is near and within the northern limits of the city, about a mile north of the company's depot. A spur track also runs across this street about forty-four feet east of the east main line tract. A person upon the crossing at the spur track has a clear and unobstructed view of both main line tracks to the south for a distance of eight hundred feet or more. As one approaches the main line tracks from the spur track, his vision is very materially lengthened to the south. This is because, at a distance of about eight hundred feet south from the crossing, the tracks curve slightly to the east and the embankment along the east side of the right of way ceases to obstruct the view to the south as one approaches the main line tracks. Respondent owns a large gasoline traction engine capable of attaining a speed of only about four miles per hour. It is operated much as an automobile, and apparently is as easily managed. In any event, in view of its slow speed, it is capable of being stopped in a very short distance when in motion. The evidence indicates that it could be stopped within four or five feet, even when proceeding at its greatest speed.

About noon of the day in question, respondent approached this crossing from the east, driving his traction engine. Coming to the foot of the hill and the spur track, he .observed a train approaching from the north on the west main track. He then stopped his engine with the rear wheels just west of the spur track. This brought the front of his engine within thirty feet of the east main line track, and brought plaintiff himself within forty feet of the east main line track. He says he could then see along the main line tracks to the south for a distance of "better than nine hundred feet." While waiting there for the south-bound train to pass, he looked to the south

for the approach of any train from the south over the east track, being the one nearest to him. He continued to so look to the south for the approach of any train from that direction until the south-bound train had about cleared the crossing, and, as he claims, then not seeing any train approaching from the south, he turned his attention to his engine and immediately started it with the view of crossing the main line tracks. He proceeded at a speed of about three and one-half miles per hour until the front of his engine was very near the east main track, not having looked to the south while so proceeding. His attention was then attracted by the sharp whistle of an engine, and, looking up, he saw an engine and passenger train approaching from the south over the east main track. He instantly decided that he could not pass over the east main track with his traction engine before the approaching train would reach him, so he stopped his engine with the front wheels resting upon or very near the east rail of the east track and attempted to back it, but was unable to do so before the train struck the forward part of his engine, causing the damages for which he here sues to recover. He was not injured himself. The engine of the train ran five hundred and eleven feet after striking his engine.

There was testimony introduced sufficient, we think, to warrant the jury in believing that the engineer saw, or would have seen, had he been exercising proper care, respondent approaching near the east main track with his heavy, slow moving traction engine, and appreciated, or should have appreciated, the fact that respondent was in a position of peril which he did not appreciate and from which he would not be able to extricate himself, when the engine of the train was seven or eight hundred feet from the crossing; that the steam was not shut off from the approaching engine or the brakes of the train applied until it was within one hundred feet or less of the crossing; and that the train could have been stopped before reaching the crossing after the engineer

saw, or in the exercise of proper care should have seen, respondent's position of danger near and upon the main line crossing. The evidence indicates that the train was running at a speed of between twenty-five and thirty miles an hour; that its speed had not materially diminished when it passed over the crossing, and that, up until within one hundred feet of the crossing, its speed was being accelerated, so that its speed was probably somewhat less at a point seven or eight hundred feet before reaching the crossing. We are not here stating our conclusions as to what the facts are in these particulars, but only that the evidence was such that the jurors, as reasonable persons, might so view the situation. This is as far as we are permitted to go in considering the facts.

It is contended by counsel for appellants that the trial court erred in declining to take the case from the jury and decide, as a matter of law, that respondent could not recover, timely motions being made in that behalf. This contention is rested upon the theory that the evidence was not sufficient to support any finding of negligence on the part of appellants, aside from their liability under the rule of last clear chance; that the evidence conclusively showed that respondent was guilty of contributory negligence, and that the evidence was not sufficient to warrant submission of the cause to the jury under the last clear chance rule. The questions thus raised were presented to the trial court by motions for judgment in appellants' favor; and also by exceptions to those portions of the court's instructions which submitted to the jury the question of appellants' negligence under the rule of last clear chance, in addition to the question of appellants' negligence apart from that rule, and in addition to the question of respondent's contributory negligence. There were no requests made in appellants' behalf for instructions to the jury excluding from its consideration any of these questions, except as the motions for judgment in appellants' favor may be so construed; but those motions amounted only to a general objection to the case going to the jury upon any theory.

In other words, counsel for appellants did not ask the trial court to separately rule upon the question of appellants' negligence apart from the last clear chance rule, respondent's contributory negligence, or appellants' negligence under the last clear chance rule, except that their exceptions to the instructions given touching the last clear chance rule may be construed as a request for a separate ruling on that question. Thus we find appellants in a situation which may be likened to that of one who demurs generally to a complaint setting up two or more causes of action, when there will necessarily result a ruling against him if any of the causes of action are good and properly pleaded. This, we will assume as we proceed, is not true of counsel's exception to the instruction submitting to the jury the question of appellants' liability under the last clear chance rule, but it is manifestly true of the other two questions.

The facts of the case, which we have above summarized, seem to compel the conclusion that the evidence was not sufficient to carry the case to the jury upon the question of appellants' negligence apart from the last clear chance rule, and also that respondent was guilty of contributory negligence, and that if these were all the questions to be decided in the case, it should be held, as a matter of law, that respondent could not recover. We shall, however, assume, rather than decide, that appellants would have been entitled to have both these questions taken away from the jury, had separate rulings been asked for instead of, or in addition to, the motions for judgment in their favor. The court might have committed error in refusing to take these questions from the jury, had requests therefor been made other than by their motions for judgment, and still not have committed error in refusing to take the entire case from the jury, since the question of appellants' negligence under the last clear chance rule was still to be decided. Of course, the court should not have taken that question from the jury, if the evidence called for its submission, simply because the other two questions should

have been taken from the jury. From these considerations we think it follows that appellants are not now entitled to a reversal of the judgment and a judgment in their favor, as a matter of law, simply because the trial court allowed the questions of appellants' negligence apart from the last clear chance rule and the question of respondent's contributory negligence to go to the jury, if we shall conclude that the question of appellants' negligence under the last clear chance rule was properly submitted to the jury. Each of these three questions was submitted to the jury by the court's instructions, in a sense in the alternative.

We come now to the real problem in the case, which is, Was the evidence such as to call for the submission to the jury of the question of appellants' negligence under the last clear chance rule? That we may have clearly before us that rule and the conditions under which it is rendered applicable as a test of a defendant's negligence, the plaintiff being guilty of contributory negligence, we quote from two of our decisions touching that subject. In *Nicol v. Oregon-Washington R. & Nav. Co.*, 71 Wash. 409, 128 Pac. 628, 43 L. R. A. (N. S.) 174, Judge Gose, speaking for the court, said:

"The doctrine of last clear chance is applied perhaps most frequently to cases where the plaintiff's negligence has terminated, and where the defendant thereafter, in the exercise of reasonable care and owing a duty to exercise it, should have discovered the peril in time to have prevented an injury. It has also often been applied where it would be apparent to one in control of a dangerous agency, if exercising reasonable vigilance, that a traveler is unconscious of his danger or so situated as to be incapable of self-protection; and in such cases, if the one controlling the agency could have averted the danger by exercising reasonable care and failed to do so, liability follows. It is based upon the principle that the negligence of the one is remote, and that the negligence of the other is the proximate and efficient cause of the catastrophe, he having the last clear opportunity of preventing it."

In *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, Judge Ellis, speaking for the court, said:

"The appellant cites certain authorities, most of them railroad or street car cases, and some of them cases arising on injuries to trespassers on railroad tracks, to sustain the contention that in no case can a plaintiff recover where his negligence continues up to the time of the injury. The authorities cited hardly bear that construction. . . . At any rate, this court has held, in accordance with many courts and with what we conceive to be the more logical as well as the more humane rule, that where the peril of a traveler on the highway is actually discovered and should be appreciated by the operator of a street car, or other agency of danger, there arises a new duty to exercise all reasonable care to avoid injury, and the failure to exercise such care, if it results in injury, will render a defendant liable notwithstanding the continuance of the plaintiff's negligence up to the instant of the injury."

These views of the rule and its application are adhered to in *McKinney v. Port Townsend & P. S. R. Co.*, 91 Wash. 387, 158 Pac. 107.

We have seen that the evidence was such as to warrant the jury in believing that the engineer saw, or in the exercise of reasonable care should have seen, respondent upon his traction engine under such circumstances that he must have appreciated the peril in which respondent's position placed him when the train was seven or eight hundred feet away; that the train could have been stopped, and was actually stopped, within a distance of five or six hundred feet, and that the engineer was negligent in not attempting to stop the train within such distance; that he could have brought it to a stop before reaching the crossing. We concede that this becomes a very close question of fact under the evidence in this case, and one which, were we sitting upon as triers of the fact rather than as triers of the law, we might arrive at a different conclusion upon than that which the jury did; but we cannot say, under all the facts and circumstances of this case, that there is not room for honest difference of opinion among reasonable minds as to the negligence of the engineer in not stopping the train before it reached the crossing.

Some contention is made touching the correctness of the instructions given by the court other than those relating to the last clear chance rule. We are quite clear that they were not prejudicially erroneous. We think the law was fairly stated therein, though, as we have seen, probably the questions of appellants' negligence apart from the last clear chance rule and the question of respondent's contributory negligence should have been taken from the jury, had the court been requested so to do. The only complaint of the instruction touching the last clear chance rule is that that question should not have been submitted to the jury.

The judgment is affirmed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.