[No. 22729.   Department Two.   May 7, 1931.]

HAZEL E. SETTLES, *as Administratrix, et al., Respondents,* v. KARL G. JOHNSON, *Appellant.*[1]

[1]Reported in 298 Pac. 690.

*Lester Whitmore* and *Reynolds, Ballinger, Hutson & Boldt,* for appellant.

*Bixby & Neal,* for respondents.

FULLERTON, J.—On March 31, 1929, one Henry J. Settles, while on a public street in the city of Bellingham, known as the Boulevard, was run over and killed by an automobile owned and driven by the appellant, Karl G. Johnson. His wife, Hazel E. Settles, was appointed administratrix of his estate, and later on brought this action on behalf of herself and on behalf of a minor daughter of the deceased against Johnson to recover in damages for his death. There was a trial by jury, in which trial a verdict was returned in favor of the administratrix in the sum of five thousand dollars. From the judgment entered on the verdict, Johnson appeals.

The first of the assignments of error made on behalf of the appellant questions the sufficiency of the evidence to sustain the verdict. On this question the jury, of course, had the right to accept as true that part of the evidence which tended to support their verdict, disregarding that which was contrary thereto. Our inquiry, therefore, is whether there was any substantial evidence which supports the jury's findings.

As to certain of the facts, there is little or no dispute. The boulevard mentioned extends in a northerly and southerly direction, and is constructed on the side of a hill. On its easterly side there is a somewhat steep bluff, and on the westerly side the slope is downward. The roadway is thirty-seven and one-half feet wide, paved for its full width, having on its easterly side a concrete sidewalk six and one-half feet wide. On its

westerly side there is a substantial fence, constructed parallel with and close to the edge of the pavement. For a considerable distance both northerly and southerly from the place of the accident there are no intersecting or cross streets. There are a number of houses on the easterly side of the street, constructed at an elevation above the level of the roadway.

At about two o'clock in the afternoon of the day of the accident, Settles and his wife drove out on the boulevard in an automobile for the purpose of viewing a house they were contemplating leasing. They drove in a southerly direction, and, when they reached a point opposite the house they intended viewing, parked their automobile close to the fence on the westerly side of the street. They then left their automobile, walked across the street and up steps leading to the house they desired to view. After completing their examination of the house, they started back to their automobile. As they reached the street, the appellant was driving his automobile in a southerly direction along the street. Mrs. Settles crossed the street ahead of the automobile. Settles himself was struck by the automobile at some point in the street, the place being a matter of dispute. Settles was thrown by the blow which struck him off the paved highway, across the sidewalk, and onto the ground between the sidewalk and the rise of the hill on that side of the street.

The accident occurred on a bright day, and at a time when there was no other traffic on the street in the immediate vicinity of the accident. The appellant's automobile, after striking Settles, swerved to its left, striking the curb of the street on that side and then going a considerable distance before it was brought to a stop.

As to the manner in which the accident causing the injury happened, the testimony supporting the verdict is principally that of Mrs. Settles. She testifies that,

after she crossed the street and reached her own automobile, she turned and looked for her husband. She then saw that he had not attempted to cross the street ahead of the appellant's automobile. Continuing, she further testified (we quote from the abstract):

"He [the witness's husband] was standing where we had originally stepped off the sidewalk. The car was coming from the north, and he was facing it, standing about three feet from the sidewalk facing it and it was coming toward him. It wasn't taking a straight line, kind of zigzagging, never slackening up speed. The speed was just the same. I should judge the speed of the car was about fifty miles an hour. As I saw him coming near my husband he was kind of swaying and Henry stood there with his hands like this (witness indicates hands up to face). When the automobile struck my husband he was facing it. He was hit and thrown up in the air and then he went through the air, head over heels. . . ."

The appellant's version of the transaction is that he was driving along the westerly side of the street, which was to him the right-hand side, at a speed not to exceed twenty-five miles an hour in a direct course without zigzagging; that he saw Settles crossing the street and signalled to him with the automobile horn; that Settles looked in his direction but kept on his course; that he swerved his car slightly to the left intending to pass behind Settles, and that he would have missed him by "two feet" had not Settles jumped backwards in front of his automobile just as the automobile reached him. He places the position of Settles at the time he was struck as some five to eight feet in the street from his own automobile, or some fifteen feet from the curb on the westerly side of the street, the opposite side from that which Mrs. Settles testified he was on when struck.

The appellant argues that the testimony of Mrs. Settles is so far improbable as to be unworthy of belief,

and that the jury should not be permitted to found a judgment upon it. But we see nothing improbable in it. Obviously, the accident could have happened in the manner she said it happened, and we think her version of it is supported by the position of Settles' body after he was struck. The body was on the same side of the street on which she testified he was standing at the time he was struck, and in the direction it would be thrown if struck on that side of the street by an automobile approaching directly towards him.

Indeed, we think her statement is much more probable than that of the appellant himself. If Settles was at the place in the street at the time he was struck that the appellant testifies he was, it is hardly conceivable that his body could have been thrown from that place to the place it was found, by being struck by an automobile travelling at no greater speed than twenty-five miles an hour, and it is highly improbable that the automobile would have struck the curb on that side of the street at a point it did so strike it, if the situation was such as the appellant describes. We cannot find, therefore, that the evidence on the part of the respondent was so far unbelievable as to require the court to say no verdict can stand upon it. It is our conclusion therefore that the challenge to the evidence was properly denied.

Of the assignments of error which are thought to require a new trial, the first to be noticed is an instruction involving the doctrine of last clear chance. The instruction need not be set out here at length. It followed almost verbatim that quoted in the case of *Stephenson v. Parton,* 89 Wash. 653, 155 Pac. 147 (1. c. pp. 658-659). The objection is, however, not to the form of the instruction but to its applicability. It is argued that the evidence in the case before us does not

present a situation on which the doctrine invoked can be predicated.

But we cannot accept this conclusion. It is possible that if the jury, in reaching a conclusion as to the precise manner in which the accident happened, were required to follow literally the verbal statements of some one or more of the witnesses, they could hardly have found a state of facts which would justify the application of the doctrine under consideration. But the jury was not thus limited. They were permitted to view the verbal testimony in connection with surrounding circumstances and conditions shown, and make up their verdict from these considerations in connection with the verbal testimony. Viewing the evidence as a whole, and discarding that which seems improbable, it was possible for the jury to find that the facts presented one or the other of the situations to which the doctrine invoked applies. See *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302; *Reamer v. Griffiths,* 158 Wash. 665, 291 Pac. 714.

The appellant requested a number of instructions, among which was an instruction stating to the jury that the street in question was an arterial highway. The court did not give the requested instruction, but we find no error in its refusal so to do. The instruction could have pertinence only to the question who had the right of way at the place where the accident occurred, and on this question the court gave the following instruction:

"You are instructed that the defendant driver of the automobile had the right of way between the street intersections and at such a place the burden is upon the pedestrian to show that he used every reasonable care for his safety, and unless he does so show by a preponderance of the evidence, such pedestrian is guilty of negligence."

As the evidence showed without dispute that the place at which the injury occurred was between street intersections, the appellant had all of the benefit the instruction requested could have afforded him.

The court gave to the jury the following instruction:

"You are instructed that if you find the accident which resulted in the death of Henry J. Settles occurred at a time and place on a public street of the City of Bellingham where the automobile had the right of way over the pedestrian, the driver of the automobile at such time and place had the superior right to proceed and also the right in the absence of knowledge or notice to the contrary, to assume that the pedestrian attempting to cross the street in front of him at such time would yield to him the right of way. A failure to yield the right of way where it is given by law is *prima facie* negligence, and if, as the proximate result of the failure to yield such right of way an accident occurs and the person not having the right of way is injured, such person cannot recover damages on account of such accident."

It is objected to this that it left it to the jury to say whether the place at which the accident occurred was or was not a place at which the appellant had the right of way, whereas, it is contended, the court should have instructed the jury positively to the effect that the right of way was with the appellant. But, conceding that the appellant was entitled to a positive instruction to the effect that he had the right of way, a question on which, we think, there might be room for doubt, we do not think the instruction given was reversible error. The evidence, as we have before noted, was undisputed that the accident occurred between street intersections, and the jury could not have reached, nor does their verdict indicate that they reached, any other conclusion. If, therefore, there was error in refusing to give the positive instruction, it was error without prejudice.

The appellant also requested an instruction to the effect that the street in question was a part of the Pacific Highway, and carried heavy vehicle traffic. The court refused to give the instruction, we think correctly. Whether the highway was a part of the Pacific Highway, or whether it generally carried a heavy vehicle traffic, were not material inquiries. The material inquiry was whether it carried a heavy traffic at the time of the accident at the place of the accident, and the evidence very conclusively shows that there was no traffic at all on the street at the particular place at that time. Consequently, to have informed the jury as to the general state of the traffic, would not have enlightened them.

The court in its instructions to the jury, in stating the issues, read from the allegations of the several pleadings. Rule V, adopted by this court on January 14, 1927, contains, among other things, the following clause: "Pleadings shall not go to the jury." [Rem. 1927 Sup., § 308-5.] It is contended that the court's action violated this clause of the rule. We quote from appellant's brief:

"The last sentence of the rule above quoted is, 'Pleadings shall not go to the jury-room.' We are unable to distinguish between sending the pleadings themselves to the jury-room and sending a copy of the pleadings to the jury-room. What difference does it make in effect whether the trial judge says to the jury, 'You may take with you to the jury-room the pleadings in this case,' or if he says to the jury, as was said in this case, 'The plaintiff makes the following allegations,' and then practically copies the entire complaint?"

But the appellant mistakes the purpose of the rule. It was not intended by the rule to prevent the court from stating to the jury the issues they were required to determine, nor was it intended to control its lan-

guage when so stating the issues. On the contrary, it was intended by the rule that the jury should derive their knowledge of the issues from the instructions of the court, and not be left to gather them from their own construction of the pleadings. Obviously, therefore, it is immaterial whether, in stating the issues, the court adopts the language of the pleadings or uses language of its own choosing. The only material inquiry is, whether, by the instructions, whatever language may be used, the jury were properly instructed as to the issues. In this instance, there is no question on that score. The same question was presented in *State v. Ramos,* 159 Wash. 599, 294 Pac. 223, concerning which we said:

"In instruction number one, in defining the issues in the case, the court quoted the charging part of the information and stated that the defendant had entered a plea of not guilty to it, which, it was stated, put in issue all of the matters alleged in the information. Counsel for appellant complain that quoting thus from the information violated the rule of practice that pleadings shall not go to the jury room. Neither the letter nor the spirit of the rule was violated. That rule was not intended, nor will it be allowed, to interfere with the giving of instructions necessary to call attention to the essential issues in the case."

Other errors assigned need no special consideration. The judgment is affirmed.

MITCHELL, BEALS, MILLARD, and MAIN, JJ., concur.