[No. 27726. *En Banc.* November 20, 1940.]

THELMA I. ERICKSON, *as Administratrix, Appellant,* v. L. T. BARNES *et al., Respondents.*[1]

[1]Reported in 107 P. (2d) 348.

252

*Thomas A. E. Lally* and *John J. Lally,* for appellant.

*H. Earl Davis,* for respondents.

ROBINSON, J.—This controversy arises out of a collision between a truck and trailer and an automobile. The vehicles approached each other on a straight, twenty-foot arterial highway. It was a dry, clear morning. There were no other cars or intervening objects on the road, and each vehicle was perfectly visible to the other while the last mile separating them was being traversed. It was not a case of side-swiping. On the contrary, the physical facts shown by photographs introduced by both parties, testified to by witnesses introduced by both parties, and contradicted

by no one, show that it was a head-on collision in which the *right* front corner of each vehicle struck the *right* front corner of the other. Furthermore, it appears beyond all dispute that contact took place almost squarely in the middle of the road. Each of the vehicles was, therefore, being driven wholly or partly out of its proper lane, and, unless excusatory facts appear, the conclusion must follow that both drivers were negligently disobeying the following statutory safety requirement:

"Whenever any person operating any vehicle upon any public highway of this state shall meet or approach a vehicle traveling in the opposite direction, such person shall seasonably turn and drive such vehicle as far to the right of the center of such highway as is practicable. . . ." Laws of 1937, chapter 189, p. 892, § 76; Rem. Rev. Stat., Vol. 7A, § 6360-76 [P. C. § 2696-834].

Clark T. Erickson, the driver of the automobile, died without recovering consciousness. This action was brought by his widow as administratrix. She alleged, as the trial court said in stating the issues to the jury, that the driver of the truck and trailer was negligent in the following particulars:

"(1) That he drove it at an unlawful and excessive rate of speed;

"(2) That he drove said vehicle on the unlawful side of said road, to-wit: on the southerly or left lane, and on the southerly and his left side of said center line thereof;

"(3) That he fell asleep in driving said vehicle and thereby permitted the same to be on the unlawful side of said highway at some distance prior thereto and at the time of the said colllision, and in this manner allowed said vehicle to be out of control;

"(4) That he had ample time to see, or by the exercise of reasonable care would have seen that a collision with the said Chevrolet and deceased was

imminent and made no effort to avoid it or to operate the brakes of said vehicle;

"(5) That the brakes on said vehicle were so worn and out of proper condition and repair that they could not be applied efficiently or at all to stop it to avoid said collision."

The defendants denied these allegations and set up various grounds of contributory negligence, relying particularly upon the allegation that, at and immediately prior to the collision, the deceased was driving upon the wrong side of the highway. The jury found for the defendants.

The appellant submitted no substantial evidence to the effect that the defendant driver was asleep, nor was there any evidence that the brakes of his vehicle were out of repair, nor any direct evidence that defendant driver failed to use them. In fact, as appellant frankly states, she relied largely upon a presumption. We quote from the appellant's opening brief:

"As the deceased never regained consciousness, and there were no witnesses to the collision, appellant's case consisted of the presumption of due care that exists on behalf of the deceased, the statements of the respondent driver, the day following the collision, as set out above, and some admissions made by him in his pre-trial deposition. The only direct testimony as to what the deceased did, is the uncorroborated testimony of the respondent truck driver."

If, by the words "direct testimony" in the last sentence of the statement, just quoted, the appellant means evidence given by eye witnesses, the statement is accurate enough, but there was a great deal of evidence introduced by both parties to the case tending to corroborate the evidence of the truck driver that, prior to and at the time of the collision, Mr. Erickson was driving on the wrong side of the road. Photographs and other evidence introduced by both parties

show that he must have been. In fact, there is no substantial evidence to the contrary; and, as we shall see later, the appellant, as the basis for her major contention on appeal, assumes that this was so, since she argues that the court erred, to her prejudice, in not submitting the case on the doctrine of the last clear chance.

The strip of highway upon which the collision occurred is between Davenport and Creston. The road, looking westerly at that point, runs nearly northwest. For convenience, we will speak of it as if it ran east and west. Erickson had left Wilbur in his automobile a little after six a. m., and was driving east to Spokane. The truck, with a semi-trailer attached, had left Spokane at about four-thirty a. m., en route west to Wenatchee. The collision occurred at a point very slightly to the westward of the low point of a slight dip in the highway and after each of the vehicles had approached each other by descending a slight grade about a half mile in length. At the bottom of the incline, coming from the east, a county road enters the arterial highway from the south. About one hundred and fifty feet farther west there is a passable road leading off to the north, but this is a private road and is closed by a gate about seventy-five feet after it leaves the highway.

The collision occurred between the two side roads, probably about twenty-five feet to the westward of the road coming in from the south. The colliding vehicles brought up at the north side of the roadway, at a distance westerly from the point of collision variously estimated by a number of witnesses at from fifty to one hundred feet. When they came to rest, the front half of the automobile was on the north shoulder of the road, with the rear end extending out at an angle into the north lane. The truck's right front wheel was also on the shoulder, and the truck itself angled out into

the roadway, but entirely within the north lane. The rear end of the trailer, however, was well within the south lane, just how far within it is a disputed point. Several witnesses said, less than five feet, and that there was room to pass it without going off the pavement. Others said that, in order to pass, a small portion of the shoulder had to be used. We do not regard its exact position as of great importance.

That the truck was astride the yellow line when the collision happened was not only admitted by its driver, but is shown conclusively by the physical facts. It may even have been south of it immediately prior to the collision. There was a hitchhiker on the truck, but he was asleep when the collision occurred. He testified, however, that there were deep gouges in the roadway leading from the front of the wrecked automobile back to the point of collision in the center of the road. The right front wheel was broken off the axle, and, according to his testimony, the deepest gouge was made by the right end of the front axle of the automobile. There is other evidence to this effect, and it said, in appellant's brief:

"Those scratches, probably made by the front broken axle and right wheel of the Chevrolet, start on the south side of the yellow line. . . ."

We cannot agree that they start on the south side. This statement in the appellant's brief is based upon her counsel's interpretation of exhibit 29, a photograph made more than six months after the event. The evidence upon the point is ample, and comes largely from the lips of the appellant's witnesses. Walter Erickson, brother of the deceased, clearly stated, at least twice, that all the scratches and gouges in the pavement were north of the yellow line, and offered two photographs, which he took a week after the collision, in corroboration of that statement. These photographs are in the

record as plaintiff's exhibits 9 and 13, and seem to us to establish the point. Edward H. Erickson, father of the deceased, also testified that they were north of the yellow line. Alwert, the hitchhiker, who was also plaintiff's witness, so testified. Frank Romburg, a Lincoln county deputy sheriff, who reached the scene within an hour after the collision, testified that the gouges and scratches were wholly north of the yellow line. The defendant Barnes testified to the same effect.

This evidence, coming from both sides of the case and fortified by corroborating photographs, leaves no room for doubt but that the right side of the Erickson car was right at the south edge of the north lane when the collision occurred, although the statute, heretofore quoted, required it to be at the south edge of the south lane. Since it is also conclusively shown, and without dispute, that the right front corner of each vehicle collided with the right front corner of the other, it is equally certain that the greater portion of the truck, at least, was south of the yellow line.

Barnes, the driver of the truck, testified, in substance, that he saw Erickson coming down the opposite slope when he himself was about four hundred feet from the point of collision, and Erickson, about five hundred; that is to say, when the cars were about nine hundred feet apart. At this time, Erickson was traveling with his left wheels nearly on the center line. He gradually crossed to the north lane, until three hundred feet or so from the point of collision he had moved completely across the center line and was driving down the north lane. As he continued in that lane for several hundred feet, Barnes assumed that he must be intending to stop or to turn off on the north side of the highway, which could have been done at any point, and especially at the side road which ran to the north. Under that assumption, Barnes began pulling to his left to give

room and got out astride the yellow line; but, when Erickson got from one hundred to one hundred fifty feet from the point of collision, he veered toward the south as if to go back to his rightful lane. Barnes then swung towards the north in an effort to cooperate, but Erickson, not continuing his maneuver, turned right up the edge of the north lane, and the collision occurred.

The foregoing is, in substance, the story told by Barnes at the trial in April, 1939. It appears to differ somewhat, particularly as to distances, from his testimony given by deposition the previous December, as was shown by his cross-examination. These differences he accounted for by stating that, in the interval, he had gone to the scene and made some measurements. Otherwise than as to distances, his story at the trial seems to have been substantially the same as he gave in December, although we do not have the whole of that deposition. It was also, as to the major circumstance, the same story he told to persons who arrived at the scene of the accident about an hour after it occurred. W. A. Wilbur, a Davenport newspaper man, was the first witness called by the plaintiff, and he testified, among other things, that Barnes told him, in the presence of his editor and the highway patrolman, that the Erickson car came down the wrong side of the road. Mr. Herring, the editor of the Davenport Times-Tribune, also called by the plaintiff, corroborated that testimony.

The father and brother of the deceased, however, testified that, two days after the collision, Barnes told them at his hotel that he was asleep when the collision occurred and did not know that any car was approaching until the steering wheel jerked in his hands. After this testimony was given, Barnes denied making any such admission, and to his counsel's query as to what

he said to the Ericksons when they called upon him at his hotel, he answered:

"A. They came and asked how it happened. They said they wanted to know how it happened. I told them that he came down the road toward Spokane, or going east; that at some distance to the west of me he pulled over into the north lane and had proceeded to do so for a number of feet, and that at the last instant he tried to turn over into his own lane, and apparently turned back, as his actions indicated by the car and the position it took. They told me they wanted to know just how the accident happened."

■ There is no direct evidence that Barnes was asleep. Uncorroborated admissions testified to by an adverse party are not looked upon with favor by the courts (*Jones v. Harris*, 122 Wash. 69, 210 Pac. 22), and when denied by the party who is alleged to have made them, they do not carry the issue to which they relate to the jury. *Kennett v. Federici*, 200 Wash. 156, 93 P. (2d) 333.

The appellant contends that the judgment rendered on the jury's verdict in favor of the defendants should be set aside on account of alleged errors in the giving and refusing of instructions. In this respect, there are eleven assignments of error.

Instructions Nos. 5, 6, and 7 concern contributory negligence. As we understand appellant, her complaint is not that they are defective as such, but, rather, that they were inapplicable, and that her requested instruction No. 11 should have been given instead. This instruction read as follows:

"The Court instructs you that there is a rule of law commonly known as the 'last clear chance' rule: where one person actually sees the peril of another person on the highway and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure makes the first person liable, al-

though the second person may have been negligent up to the instant of injury.

"Therefore, if you find by a preponderance of the evidence that the defendant, L. T. Barnes, in driving the truck in question on the public highway, actually saw that Clark T. Erickson had created a peril by driving the Chevrolet on the unlawful side of the highway or in a negligent manner towards said truck, and that said defendant failed to use reasonable care to avoid a collision and injury, you will return a verdict for the plaintiff, even though you may also find that said Clark T. Erickson may have been negligent and that his negligence continued up to the instant of the collision and injury."

We shall pass all questions as to whether or not this instruction was sufficient in content to deal with the broader question as to whether the court erred in holding that the evidence did not present a case to which the doctrine applies. The appellant cites the following cases as supporting her contention that the doctrine should have been applied in this case: *Flagg v. Vander Yacht,* 174 Wash. 521, 24 P. (2d) 1063, where a motorist overtook and killed a man who was walking on the wrong side of the road and paid no attention to the repeated blasts of her horn; *Johnson v. Burnham,* 198 Wash. 500, 88 P. (2d) 833, a straight contributory negligence case in which the doctrine of last clear chance was not applied or even mentioned; *Smith v. Bratnober,* 188 Wash. 244, 62 P. (2d) 455, in which the defendant ran into a disabled car parked in the road; *Locke v. Puget Sound International R. & P. Co.,* 100 Wash. 432, 171 Pac. 242, where a street car motorman saw a man about to ride a tricycle across the track. We quote briefly from this case:

"When the motorman saw respondent and rang the gong, he had the right to assume that respondent would look out for his own safety to the extent of stopping, or clearing the track if upon it. But when respondent

did not heed the warning, the motorman, having time, was in duty bound to protect him."

Appellant also cites *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912B, 342, another street car case dealing with the negligence of a motorman upon seeing a six year old boy attempting to cross the track and in which no last clear chance instruction was given; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302, where a motorman saw that a man was walking so close to the track at a curve that the overhang of his car would injure him if he did not slow down the car; *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640, where a motorman saw, or should have seen, a man asleep on the track; *Switzer v. Seattle,* 159 Wash. 540, 294 Pac. 225, substantially the same as the *Leftridge* case, *supra*; *Reamer v. Griffiths,* 158 Wash. 665, 291 Pac. 714, an intersection case where two motorists approached each other at right angles; *Ricker v. Oregon-Washington R. & Nav. Co.*, 97 Wash. 183, 166 Pac. 71, where the engineer of a railroad train saw a traction engine stalled on a crossing and unable to move therefrom; *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, where a plaintiff pedestrian was injured crossing a street; *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139 Pac. 499, where a cab driver ran down a man crossing a street, although he could see him for half a block before he reached the crossing; *Smith v. Gamp,* 178 Wash. 451, 35 P. (2d) 40, another case of a pedestrian injured at a street crossing; *Locke v. Greene,* 100 Wash. 397, 171 Pac. 245, where a motorist killed one of a group of boys playing in the street; *Settles v. Johnson,* 162 Wash. 466, 298 Pac. 690, where a motorist ran down a pedestrian on a street; *Stephenson v. Parton,* 89 Wash. 653, 155 Pac. 147, where a man standing in a street beside his

wagon was struck by a driver who had seen him when he was two or three hundred yards away.

The facts in all of these cases are so dissimilar from the facts in the case at bar as to render them of little or no value in deciding the question now under discussion. The deceased in this case could have extricated himself from whatever danger he was in at any instant and up to within a second of the collision, and the truck driver was entitled to assume that he would. Furthermore, it was a reasonable assumption that the deceased intended to pull off the north side of the road.

The appellant, however, cites one case of a head-on collision between meeting automobiles, *Thompson v. Collins,* 139 Wash. 401, 247 Pac. 458; but in that case, as the court says, the plaintiff's car was on the wrong side of the street "in a pocket" from which it could not escape. That opinion is, therefore, not in point.

No case is cited, and we have found none, where the doctrine of last clear chance has been applied where there has been a collision between two motor vehicles meeting each other on a straight and unobstructed road where each had full opportunity to avoid the other by holding to the right. On the other hand, there are a number of decided cases where the applicability of the doctrine has been denied under such states of fact. Two reasons frequently given for such denial are suggested in *Thompson v. Collins, supra*:

"There must, of course, be an appreciable length of time in which the actor, upon whom rests the duty of avoiding the damage and injury after the other has placed himself in a situation of danger, may act. If respondent had an *equal chance* to exercise the last clear chance to avoid the accident, of course neither had the duty of exercising the last clear chance, because the chances were equal."

When two drivers collide head-on after approaching each other on a straight, unobstructed highway, one

traveling in his proper lane and the other not, it is difficult to imagine how the doctrine of last clear chance can be applied to the driver who was in his proper lane. It is obvious that he has less than an equal chance to avoid the collision, for to do so he must depart from the path which the statute specifically requires him to maintain, while the other driver needs only to obey the statute and swing back where he belongs.

When, in such a case, does the offending driver get into a position of peril from which he cannot extricate himself? Or, at what point is the driver of the other vehicle no longer justified in relying upon the presumption that the offending driver will obey the law and return to his own lane? No specific answer can be given to these questions. But it is apparent that the offending driver is in no real peril until the cars have closely approached each other, for he can swerve into his rightful lane in less than a second. In this case, for example, the testimony is that Erickson was driving thirty-five miles per hour, or fifty-one feet per second. Obviously, he could have swerved from one lane of the twenty-foot highway into the other in less than fifty feet, and, therefore, in less than one second. Since a shift from one lane to the other can be made so quickly, the driver, in his proper lane, is justified in assuming, until the cars are quite close together, that the shift will be made. When the point has arrived when this assumption is no longer justified, it would seem that there is no longer time for the application of the doctrine of last clear chance, for, as said in *Steen v. Hedstrom,* 189 Wash. 75, 63 P. (2d) 507, the doctrine implies time for appreciation, thought, and to effectually act. See, also, *Burlie v. Stephens,* 113 Wash. 182, 185, 193 Pac. 684.

In *O'Malley v. Eagan,* 43 Wyo. 233, 2 P. (2d) 1063, 77 A. L. R. 582, a driver was held not to have been negli-

gent in failing to swerve or stop until the driver approaching on the wrong side of the road was fifty to fifty-eight feet distant. The court said, in part:

"To hold that under these circumstances the jury had a right to say that defendant should have known sooner than he did that Eagan would not turn out would be contrary to the general rule that the jury's decision must be based upon evidence, and would leave them an arbitrary discretion which is nowhere warranted in the law. To give them such power would, we fear, so unsettle the 'law of the road,' as to lead to dangerous consequences, and bewilder all travelers in automobiles in knowing when or when not to rely on the fact that the person coming from the opposite direction will obey the law. We think, accordingly, that defendant cannot be held to have been negligent in not sooner determining that Eagan would not turn out. That was, when he was about 50 to 58 feet distant, or, as stated by him in another place, just an instant before the collision. The same reasoning applies to defendant's duty to stop. He could not be held to have been negligent until he saw or could have seen that Eagan would not obey the law."

[See, also, *Ramage v. Trepanier*, 69 N. D. 19, 283 N. W. 471, in which an instruction on the last clear chance doctrine was held inapplicable. This and the opinion in the *O'Malley* case review a number of decisions dealing with the question as to whether the doctrine of last clear chance applies when the facts are similar to those presented in the instant case.]

Under the evidence in this case, it would seem that, if the last clear chance doctrine applied at all, it would apply in favor of the defendant driver. He had not unreasonably assumed from Erickson's persistence on the wrong side of the road that he intended to turn off on that side and had, accordingly, pulled to the left to avoid him. When the vehicles were from two hundred to three hundred feet apart, defendant Barnes realized that Erickson was not going to pull off the north side of the road, but was actually going to swerve to the south

side. At that time, Erickson was completely in the north lane, and Barnes almost wholly in the south. It is said that Barnes was driving forty-five miles per hour, and the testimony is that Erickson was making thirty-five. They were, therefore, closing the two hundred or three hundred foot gap at the rate of 118 feet per second. It would seem that, at that time, the real chance to avoid the collision was for Erickson to hold his course instead of again forcing Barnes to again change his.

The situation became very like that presented in the case of *Kennedy v. Opdenweyer,* 11 La. App. 532, 121 So. 636, 639, 123 So. 906. In that case, the defendant, driving on his proper side of the road, met one Kennedy, who was unlawfully driving in the same lane. Kennedy persisted in so doing, to the point where the defendant turned to his left in an effort to avoid a collision. Unfortunately, Kennedy, at the same instant, concluded to go back to the lane where he legally belonged. A collision ensued, and, since the defendant was on the wrong side of the road when it occurred, he was in a very disadvantageous position in the action which Kennedy brought against him. The court said, in part:

"From the foregoing testimony, facts, and circumstances it is therefore clear that defendant was forced by Kennedy who was driving on the wrong side of the highway to suddenly veer his sedan to his left and to dash across the road to avoid a head-on collision. . . . The defendant here was confronted with an emergency, was suddenly placed in a perilous situation, and, to avoid the impending danger, with little time to think or reflect, dashed across the road, and in which it must be held that he pursued the proper course and exercised ordinary care under the circumstances. See, also, *Smith v. Interurban Transp. Co.,* 5 La. App. 704.

"*Plaintiff invokes also the rule of the last clear chance, which it is contended defendant failed to ob-*

*serve. This rule has no application in this case, but, if it can possibly be applied, it can be said that, when defendant veered to his left, he offered Kennedy the opportunity to pass him on the south side of the road, and thus take advantage of the last clear chance to escape the impact."* (Italics ours.)

■ Whether or not the facts warranted the giving of a formal last clear chance instruction, was a question of law for the court to decide. *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371.

In our opinion, the court properly refused to give instruction No. 11. Under the circumstances, instruction No. 8 was wholly adequate. This instruction read as follows:

"You are instructed that the driver of a motor vehicle upon the public highways of the State of Washington is presumed to know the rules of law governing the use of such highways, and is required to observe and comply with them, and is entitled to presume that other travelers thereon will likewise observe and comply with those rules, and may lawfully act upon that presumption and govern his movements in accordance therewith until he knows or ascertains by the exercise of such lookout and caution as an ordinarily careful and prudent person would exercise under like or similar circumstances, that such other traveler is not using the highways in compliance with such rules, in which case it would be his duty in the light of such knowledge, either actual or constructive, to exercise such care as a reasonably careful and prudent person would exercise under like circumstances for his own safety and the safety of the other traveler."

■ ■ The appellant took exception to the following instruction:

"I instruct you that where one has been killed in an accident, the law, out of regard to the instinct of self-preservation, presumes that the deceased was at the time in the exercise of due care.

"In this connection I instruct you that the law pre-

sumes that at the time and place in question, the deceased, Clark T. Erickson, was driving his automobile on his own, or right side of the highway. This, however, is merely a presumption, it is not evidence and may be overcome by the evidence in this case to the contrary, if there is such evidence, but it continues as a presumption until it had been overcome by the evidence in the case, and whether or not it has been overcome is a question of fact for you to determine.

"The burden rests upon the defendants to establish by a preponderance of the evidence their affirmative defense of contributory negligence on the part of the deceased, Clark T. Erickson, at the time and place in question. In other words, the burden rests upon the defendants to establish that the deceased, Clark T. Erickson, was operating or driving the Chevrolet automobile to the right of the center, or the wrong side of the highway."

The appellant's exception was taken on the ground that the instruction fails to tell the jury that contributory negligence must be established by disinterested witnesses.

In our opinion, the instruction was erroneous, but the error was wholly favorable to the appellant. Here was a situation where the fact that Erickson was driving on his wrong, or left, side of the highway at the time and place where the collision happened, was conclusively established by undisputed evidence of physical facts, which evidence was, for the most part, adduced by the plaintiff, suing as administratrix of the deceased; and, yet, the jury was told:

"I instruct you that the law presumes that at the time and place in question, the deceased, Clark T. Erickson, was driving his automobile on his own, or right side of the highway. . . ."

It must be admitted that our case law concerning the presumption mentioned in the first paragraph of the instruction complained of has been, and perhaps

still is, in a state of flux. In some of our former decisions, it has been treated as one of fact and sent to the jury to be balanced against evidence. The incongruous result to which treating the presumption as factual may lead is well illustrated by the instruction given in this case. An attempt was made to clarify the matter in a recent Departmental opinion in *Morris v. Chicago, M., St. P. & P. R. Co.*, 1 Wn. (2d) 587, 97 P. (2d) 119. After an extended review of our former cases, the opinion laid down three general rules. Three judges approved the opinion in its entirety; one approved rules 1 and 2 only; the fifth judge dissented. A rehearing *En Banc* was granted, in which the Departmental opinion was sustained; three judges dissenting.

Applying rule 2, announced in that opinion, to this case, it follows that the presumption that the deceased was acting with due care performed its proper office in getting the plaintiff past the defendant's motion to dismiss, and when the time came to instruct the jury, the presumption had disappeared from the case. No instruction concerning it should have been given. The jury was instructed that the defendant must prove contributory negligence by a preponderance of the evidence; and further, that, in weighing the testimony of a witness:

"You have a right to consider . . . the interest, if any, you may believe a witness feels in the result of the trial."

This was all that was required. To instruct the jury that the law presumed that Erickson was driving his automobile down his own side of the highway, in the teeth of conclusive evidence that he could not possibly have been doing so, was error, but error in the appellant's favor, not to her prejudice.

■ The plaintiff alleged five causes of negligence; and, as we pointed out earlier in the opinion, the trial court set them out, one by one, in stating the issues. Instruction No. 12, as given by the court, reads, in part, as follows:

"The questions, then, for you to determine under the law, as stated to you in these instructions, and all the facts and circumstances disclosed by the evidence, are:

"(1) *Was the defendant, L. T. Barnes, the claimed driver of the truck and trailer, guilty of the acts of negligence charged against him as set forth in the statement of the issues herein?*

"(2) If there was any such negligence on the part of the defendant L. T. Barnes, was such negligence the proximate cause of the collision? . . .

"*If you find from a preponderance of the evidence that the defendant L. T. Barnes, the claimed driver of the truck and trailer, was guilty of the acts of negligence charged by the plaintiff as set forth in the Statement of the Issues,* and such negligence was the proximate cause of the collision, then your verdict should be for the plaintiff, unless you should further find from a preponderance of the evidence that the deceased, Clark T. Erickson, was guilty of negligence as hereinbefore explained to you.

"*On the other hand, if you find from a preponderance of the evidence that the defendant L. T. Barnes was not guilty of the acts of negligence charged against him, then your verdict should be for the defendants.*" (Italics ours.)

Appellant directs our attention to those portions of the instruction which we have italicized, and contends that they must have, or at least may have, given the jury to understand that the plaintiff was required to prove all of the acts of negligence charged against defendant Barnes; and it is urged that, since no evidence at all was introduced as to some of the acts of negligence alleged, this amounted to a "mandate" to the jury to find for the defendants. As to this instruction,

the trial court, in ruling upon the plaintiff's motion for a new trial, said:

"Instruction No. 12 as given is also assailed because it is claimed it requires the plaintiff to prove certain pleaded claims of negligence upon which there was no proof and which were abandoned by the plaintiff.

"I must confess that this instruction is not happily worded insofar as this criticism is concerned, and I do feel that if any prejudice resulted to the plaintiff by reason thereof I would not hesitate to give it serious consideration. However, I am cognizant of the fact that this case was tried, insofar as the evidence was concerned, upon the simple issue of who was on the wrong side of the road, and it was extensively argued upon the same proposition, and I am sure that the jury could not have been misled by the criticized statement. In any event, the instructions are to be read together and no one instruction could be picked out and emphasized over the others."

We have examined the instructions as a whole, and are of the opinion that the jury could not have been misled.

Finally, it is said, in appellant's brief, under the heading "The Probable Facts":

"Appellant believes that what actually happened was: that the respondent was asleep and permitted his truck to proceed on the wrong or south lane of the highway, in which lane the deceased was approaching; that very probably the deceased sounded his horn which could not be heard by the respondent because of the noise of his truck; that the deceased then turned into the north lane to avoid the truck; that the respondent awoke, and seeing his car proceeding on the wrong side, turned his truck and trailer from the wrong or southern lane, north into its proper lane at the time the deceased was passing, and that in that manner, the right front corner of the truck struck the right front corner of the Chevrolet and pushed the Chevrolet back seventy-five feet so that it stood at point marked 'T-3'."

The fact that the appellant resorts to this hypothesis is of itself indicative of the factual insufficiency of her case; for, where there is evidence approximating proof, there is no need or room for hypothesis. The hypothesis makes a number of assumptions which are not supported by any evidence. The hypothesis, moreover, is to some extent inconsistent with the known facts. For example, if Erickson had attempted the maneuver postulated by the writer of the appellant's brief, he would have naturally directed his course to and along the extreme northern edge of the highway, whereas it is an established fact that, at the time the collision occurred, he was driving along the southern edge of the north lane.

██ Furthermore, the hypothesis completely disregards the testimony of Barnes, the driver of the truck. Barnes, being a defendant, was an interested witness, but the jury had a right to believe him no matter how great his interest in the outcome of the case; for an interested witness may nevertheless be credible, and the credibility of witnesses is exclusively for the jury.

██ Upon the actual evidence in the record, as contra-distinguished from surmise and conjecture, it is difficult to see how the jury could have returned a verdict for the plaintiff. If the members of the jury believed Barnes, they could not do so. If, on the other hand, they rejected his evidence *in toto,* nothing was left for their consideration but the evidence as to the physical facts; and, since it appeared from this evidence, and beyond all question, that the *right* front corner of the automobile came into head-on collision with the *right* front corner of the truck in approximately the middle of the highway, it would seem, there being no explanatory or excusatory evidence, that the members of the jury would have been compelled to conclude that each of the drivers was flagrantly dis-

obeying the rules of the road, in which case, of course, they could not find a verdict for the plaintiff. At any rate, they did not do so; and, as their verdict is controlling as to the facts, and we find no prejudicial error of law, the judgment appealed from must be affirmed.

It is so ordered.

BEALS, STEINERT, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

MAIN, J. (dissenting)—I think the instruction defining the presumption of due care on the part of the deceased was not only erroneous, but prejudicial. It was erroneous in that it failed to tell the jury that the presumption of due care could not be overcome by interested testimony. It was prejudicial in that it was upon a vital issue in the case. I think the presumption was still in the case at the time it was submitted to the jury, and the appellant was entitled at that time to a proper instruction upon it. Had the jury been instructed that the presumption could be overcome only by disinterested testimony, the verdict might well have been for plaintiff. For, in my opinion, the physical facts were not in themselves sufficient to overcome it.

BLAKE, C. J., and MILLARD, J., concur with MAIN, J.