**D. E. DARTER** and **Frank Deavers,**
Appellants,

v.

Viola Alice **GREINER**, as Executrix of the Estate of Jacob L. Greiner, deceased; and Viola Alice Greiner, individually as surviving widow of Jacob L. Greiner, deceased; and State Farm Mutual Automobile Insurance Company, Appellees.

No. 6805.

United States Court of Appeals
Tenth Circuit.

March 13, 1962.

Rehearing Denied April 13, 1962.

William W. Gilbert, Santa Fe, N. M. (Gilbert, White & Gilbert, Santa Fe, N. M., of counsel, were on the brief), for appellants.

David R. Gallagher and Eugene E. Klecan, Albuquerque, N. M. (McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, N. M., were on the brief with them), for appellees.

Before HUXMAN and LEWIS, Circuit Judges, and RICE, District Judge.

LEWIS, Circuit Judge.

After proper removal of this case from the state court to the United States District Court for the District of New Mexico this action continued as a cause brought under the New Mexico Wrongful Death Act. Trial to a jury resulted in the entry of judgment upon a verdict favoring plaintiffs, now appellees. We deem as dispositive of this appeal the

question of whether the trial court properly submitted to the jury the doctrine of last clear chance. The defendants-appellants contend that the trial court presented a false issue to the jury by instructing on last clear chance because of the total inapplicability of the doctrine to the evidence adduced at trial.

The husband of plaintiff Greiner was killed in a head-on collision of his automobile with a commercial truck-trailer driven by defendant Darter, an employee of defendant Deavers. The accident occurred on a two-lane highway in New Mexico at about 5:15 p.m. on April 9, 1959. The decedent was northbound; the truck southbound. Both drivers had the potential of sighting the other for a distance of more than 600 feet before meeting.

The record reveals testimony and evidence more than ample to support plaintiffs' principal theory that the accident was caused solely by the negligence of the defendant driver. The position of the vehicles after impact, skid marks, debris and other physical evidence coupled with expert opinion clearly would support the conclusion that the impact occurred in the east lane of the highway reserved for northbound traffic; that the truck was on the wrong side of the road and had been for an appreciable distance before impact; and that decedent was at all times in his proper lane and totally free from negligence. This version of the evidence will not support an application of the last clear chance for, as the parties agree, the trial court correctly stated that negligence upon the part of the decedent was a condition precedent to the application of the doctrine. The court analyzed the law of New Mexico upon the subject thus:

"The doctrine of last clear chance would only be applicable if you find from the evidence that each of the following conditions existed:

"1. That the deceased negligently placed himself in a position of danger.

"2. That having placed himself in such position, it was impossible for him to avoid injury through the exercise of ordinary care.

"3. That the defendants had actual notice that the deceased was in such position of danger and knew, or should have known, that he could not escape from it in time to avoid the accident.

"4. That the defendants' aforesaid knowledge of the decedent's position of danger and of his inability to escape from it was acquired a sufficient length of time before the accident, so that the defendants had a clear chance to avoid the accident by the use of ordinary care.

"5. That the defendants failed to take the opportunity to avoid the accident and negligently caused it to occur."

Negligence upon the part of the decedent could, however, have been found by the fact-finder had that body deemed the testimony of the truck driver credible. That defendant gave this account of the accident:

"Q. Mr. Darter, at the time of the accident under investigation here were you driving the tractor-trailer that was involved? A. Yes, sir.

"Q. All right, sir. Now, take from the time you started up the hill to where the accident occurred and just tell the jury what you saw and what happened. A. Sir, I was proceeding south on the highway and as I was going up over this rise, I saw a car going over the hill and when it had approached closer where it come into full visibility I could tell it was on the wrong side of the road.

"Q. Which side of the road were you on as you came up that hill? A. I was on my right going south.

"Q. All right. When you first saw this car approaching you, could you see the entire car or only part of it? A. I could only see the top of the car.

"Q. At that time could you tell what side of the road it was on? A. No, sir.

"Q. All right, sir. Then what happened as you went on up the hill? A. As I went on up the hill and it came toward me, come into full view, I could tell that it was on the left side of the highway or the west side of the highway.

"Q. All right, sir. About how far apart, if you know, were you and this car at the time you could first tell that it was on its wrong side of the road, in your lane? A. Well, this would just be an estimate. I would say 150 to 175 feet.

"Q. All right. What happened then? A. I whipped to my left to try to avoid collision with the automobile.

"Q. Did you whip clear across the highway or what? A. Well, I started across the highway, anyway, was trying to get off the highway to the left.

"Q. And what happened? A. I don't know exactly; it happened so quick. The next thing I knew, we had a collision."

This version of the collision finds some support in the existence of skid marks upon the highway which, if made by decedent's vehicle, might indicate an abrupt turn by that driver from a point straddling the center line to the proper right-hand lane just prior to impact. These facts, if the jury found them to be facts, combined with the testimony showing at least 600 feet visibility, form the background for the court's instructions on last clear chance.

■ We are of the opinion that the issue should not have been so submitted and that by so doing a false issue was inserted for the jury's consideration. See Mitchell v. Machinery Center, Inc., 10 Cir., 297 F.2d 883. The evidence does not indicate an opportunity clearly open to the defendant that wasn't equally available to decedent. It is of course true, as plaintiffs point out, that the collision might conceivably have been avoided had the defendant continued in his proper lane or had turned right instead of left. We find no legal significance to such speculation. It is possible that no collision would have occurred had the decedent turned left instead of right. The concept of a last clear chance is negatived by either the existence of a sudden emergency or by the existence of equal opportunity to act. The Supreme Court of New Mexico in a case so similar in fact to the case at bar that we deem the opinion highly persuasive if not controlling quotes and gives unqualified approval to the reasoning of the Supreme Court of Washington thus:

"The Supreme Court of Washington had a very similar state of facts before it in Erickson v. Barnes, 1940, 6 Wash.2d 251, 107 P.2d 348, 353, and it stated:

" 'When two drivers collide head-on after approaching each other on a straight, unobstructed highway, one traveling in his proper lane and the other not, it is difficult to imagine how the doctrine of last clear chance can be applied to the driver who was in his proper lane. It is obvious that he has less than an equal chance to avoid the collision, for to do so he must depart from the path which the statute specifically requires him to maintain, while the other driver needs only to obey the statute and swing back where he belongs.

" 'When, in such a case, does the offending driver get into a position of peril from which he cannot extricate himself? Or, at what point is the driver of the other vehicle no longer justified in relying upon the presumption that the offending driver will obey the law and return to his own lane? No specific answer can be given to these questions. But it is apparent that the offending driver is in no real peril until the cars have closely approached each other, for he can swerve into his rightful lane in less than a second. * * * Since a shift from one lane to the other can be made so quickly, the driver, in his proper

lane, is justified in assuming, until the cars are quite close together, that the shift will be made. When the point has arrived when this assumption is no longer justified, it would seem that there is no longer time for the application of the doctrine of last clear chance, for \* \* the doctrine implies time for appreciation, thought, and to effectually act.'

"We believe the holding in the case is sound and is applicable to the facts and problems confronting us here." Hartford Fire Ins. Co. v. Horne, 65 N.M. 440, 338 P.2d 1067.

 Plaintiffs attempt to weaken the reasoning of the New Mexico court and, in turn that of the Washington court, by asserting that in Hartford the unoffending driver continued in his proper lane until collision and that in the case at bar the defendant turned left. Such argument appears faulty both in fact and law for in the referenced case each driver turned left and the significance of the factual situation in all these cases lies in the actions of a driver faced with an oncoming vehicle approaching on the wrong side of the highway and equal opportunity existing in each driver to act. The reasonableness of last minute action is governed by the rules of sudden emergency and not the doctrine of last clear chance.

Plaintiffs also urge that no proper objection was made to the court's instruction on last clear chance. We see no merit to this contention. The objection taken was worded:

"Mr. Gilbert: We have no objection to the form of the instruction on last clear chance that was given, but we do object to any issue of last clear chance being submitted, for the reason that we feel there is not sufficient evidence to justify the submission of that issue."

The objection meets the requirements of Rule 51, F.R.Civ.P. 28 U.S.C.A. A formal objection need not include detail of supporting argument in order to fully apprise the court of the grounds of the objection. And it is perfectly proper for counsel, as was done here, to suggest the proper form of an instruction while reserving objection to the submission of the subject matter of the instruction.

Defendants assign as further error the refusal of the trial court to admit in evidence a police report material to the cross-examination of a police officer. The material portions of this report are so overwhelmed by extraneous and prejudicial matter contained in the document that its exclusion was well within the trial court's discretion. Other assignments of error become moot in view of our disposition of the case.

Reversed with instructions to grant a new trial.